## No. 12,325.

STATE EX REL. CRESCENT CITY RAILROAD COMPANY VS. A. C. BELL, CITY ENGINEER.

In the first contract between the plaintiff and the municipality, that the lines and levels of the contemplated road would be furnished by the surveyor.

That duty is incumbent upon that officer, under the terms of the contract. He can not in law decline to act before he is stopped by the legal action of the constituted authorities.

*Mandamus* lies to compel the performance by an officer of duties purely ministerial. The defendant joined issue on the merits.

*McEnery, J., dissenting:* When the public officer is to be reached by *mandamus*, it must be when his duties, which are sought to be enforced, are public, clear and unequivocal, in which there is no latitude for the exercise of his discretion.

APPEAL from the Civil District Court for the Parish of Orleans. *Ellis, J.*

---

*Farrar, Jonas & Kruttschnitt* for Relator, Appellee.

*James J. McLoughlin*, Assistant City Attorney, and *Samuel L. Gilmore*, City Attorney, for Defendant, Appellant,

*Henry P. Dart, amicus curiæ,* submits a brief.

Argued and submitted February 5, 1897.
Opinion handed down February 15, 1897.
Rehearing refused (reasons assigned) April 12, 1897.

The opinion of the court was delivered by

BREAUX, J.   The relator applied for a writ of *mandamus* to compel the City Engineer to furnish it lines and levels, for the construction of its railroad through the neutral ground of Carrollton avenue, from Second to Fourth streets.

The relator claimed that it owned a railroad franchise and that subsequently the City Council passed an ordinance, under which certain changes were made in the matter of the line of the railroad; that instead of the right to use either Fourth or Second street from Broadway to the upper *terminus,* it was ordained that it shall construct its road on Second from Broadway to Carrollton avenue, thence through the neutral ground of Carrollton avenue to Fourth, thence along Fourth street to the parish line.   The relator alleged that the whole road has been completed except that portion which runs through Carrollton avenue from Second to Fourth street; that the whole of the line has been for some time operated from the lower *terminus* up Second street to Carrollton avenue, and relator is anxious to connect its line so as to operate its line from *terminus* to *terminus.*

The respondent returned in answer to the preliminary order issued on the application for a mandamus, that it was not his duty to deliver to relator lines and levels, because the amending ordinance under which the relator claims a franchise has been repealed by the City Council.

If it has not been repealed, then relator sets up that relator's allegations are vague and indefinite, and that they do not indicate upon what neutral grounds to establish the lines and levels; that they do not designate upon which of the three strips of neutral ground on Carrollton avenue the tracks are to be laid.

678                SUPREME COURT OF LOUISIANA.

State ex rel. Railroad Co. vs. City Engineer.

And, lastly, the grounds are that the relator has no contract with the city and holds no franchise from the city; that the alleged contract is void.

As a question of fact, it is not disputed that the relator has constructed its line of road as alleged in its petition.

The ordinance under which relator claims a franchise was considered and discussed in the case of Crescent City Railroad Company vs. New Orleans & Carrollton Railroad Company, 48 An. 856, 866. It relieves us from the necessity of discussing at length the original ordinance, under which the relator acquired its franchise.

It is also a fact that relator accepted the terms and conditions of the ordinance.

Subsequently, the council took it in hand to repeal the ordinance granting the franchise claimed. It appears that the action of the City Council was made final after the service of the alternative writ of *mandamus* upon respondent. If there is a right of action, no question is raised as to the want of authority to proceed by way of *mandamus*; in other words, it was not contended that the relator had mistaken its remedy. From the specifications made part of the first ordinance we extract: "This road shall follow the route described in the above ordinance, and indicated in the accompanying plan. The full red lines in said plan shows the route proposed, and the dotted red lines the route which the purchasers have the option of using."

"It shall be built on lines and levels given by the City Surveyor."

From a judgment making the writ of *mandamus* peremptory the respondent prosecutes this appeal.

The repeal of the ordinance *vel non*, authorizing a change in the route of the road, is the first question before us.

The council had entered into a contract with relator, and adjudicatee of a franchise. So far as the record reveals, the relator had complied with the terms of the adjudication; the amount of the bid had been paid. The relator, in so far as we are informed, had complied with its contract. It had constructed its road on lines and levels furnished, and only a short distance remained to be constructed from *terminus* to *terminus*. There was an existing contract between the city and the corporation relator. It was no longer within the power of the city to treat this contract as an absolute

nullity and to pass an ordinance canceling the prior ordinance changing the route and abrogating all possibility of claiming any right under it. There was no question of fraud or unfair dealing of any kind disclosed by the record. By its execution the contract acquired a validity to which effect should be given until it is regularly annulled contradictorily with the party in interest.

In our opinion, in the case of Railroad Co. vs. Mayor, 48 An. 1102, 1115, in regard to a similar question, we said: " We would not be justified in treating the ordinance as void. It must remain in force until decreed null in proceeding to that end. It may be that the council, desiring to encourage plaintiff's enterprise, has conceded more than it should have conceded; nevertheless, the concession was made and has been accepted and the conditions complied with. It has become *a fait accompli*, which under any view is not void and can not be absolutely ignored by the defendant as attempted by ordering the reopening of the street."

We must adhere to the principle laid down in that case. It applies here. It is an equitable principle applying even if a contract is null in its origin. *Multa fieri prohibentur quæ si facta fuerint, obtinent firmitatem.* If a contract is voidable proper steps must be taken to have its nullity declared.

The respondent insists in the second place, for reasons stated, that he can not furnish the lines and levels. The ordinance pleaded by the relator directs the course to follow. Lines and levels having been given in other streets, there is no good reason for coming to a stop with this work at Carrollton avenue. Manifestly there is a neutral ground on that avenue.

Respondent admits in his answer that there are such grounds; the difficulty it appears consists in the fact alleged by him that they are divided into three strips. That of itself should not be considered enough to prevent the running of the line. The line can be drawn under the ordinance despite the strips.

Lastly, the respondent insists that the relator has no contract with the city, and holds no franchise from the city; the alleged contract offered in evidence by relator being absolutely null and void.

In discussing the second proposition of respondent's answer, we found that the relator did enter into a contract with the city as alleged, and we decided that it was not subject to collateral attack. We will only add that, in our judgment. a ministerial officer called

·upon to execute an ordinance is without authority to raise the question the position here taken implies.

The question was carefully considered by us in the case of State ·ex rel. N. O. Canal and Banking Company et al. vs. Heard, 47 An. 1679, and the conclusion was reached that a doubt as to the validity of a statute would not justify a ministerial officer, who has no inter- ·est involved, in raising questions of irregularity of its adoption.

In our judgment the decree of the lower court was correct.   It must be and it is affirmed.

NICHOLLS, C. J., rests his concurrence on the ground of acqui- ·escence.

### DISSENTING OPINION.

McENERY, J. I dissent from the decree in this case for the follow- ing reasons:

I will briefly refer to two grounds assigned by the respondent why ·a mandamus should not be granted.

First. The nullity of the grant to the plaintiff corporation to change the route previously granted to it and to occupy the territory through which the respondent officer is required to give lines and levels; in 'other words, to locate the plaintiff's street railway. Probably this would in itself not be a sufficient excuse, but it is to be considered in connection with the repealing of the ordinance grant- ing said franchise, which is set out as an excuse.

But, if under the authority of State ex rel. Nicholls, Governor, vs. :Shakespeare, Mayor, 41 An. 156, and Railroad Co. vs. Railroad Co., ·47 An. 315, he has no right to question the validity of a law which defines his official duties, the same authority is good for the assertion that he must respect the law which repeals the former and imposes new duties upon him.   He must conform his duties to the immediate law which defines them.   It is the duties vel non of the officer under ·consideration.   We have no right without all parties interested are made parties to break down the immediate law and look for his ·duties in the ordinance which was repealed by the City Council.

Act No. 135 of 1888 requires the franchises of all street railways to be offered at public sale, and adjudicated to the highest bidder.   The Legislature has declared that these franchises are of value, and that the city is without power to gratuitously grant them.

My attention has been called to the case of East Louisiana Rail- ·road Company vs. City, 46 An. 526.   In that case the issue presented

was whether or not the railroad was a street railway. If so the grant was null and void, notwithstanding the acceptance of the grant by the railway corporation and the money expended by it in perfecting the same. This was conceded in the case. The court found that the railroad corporation was engaged in transporting freight, passengers and mails beyond the city limits, and did not come within the purview of said act. It was a railroad and not a street railway, and the City Council of New Orleans, without complying with the provisions of the act, could grant the franchise.

The same principle was decided in the case of New Orleans City & Lake Railroad vs. Dr. W. H. Watkins, 48 An. 1550. This court held that it was a street railway, and not a railroad, and the grant was null and void, because of a failure to comply with the provision of Act No. 138 of 1888.

There can be no acceptance of a grant null and void, which will give it validity, and no amount of money expended in utilizing it can have the effect of giving validity to that which has none.

In the instant case, the Crescent City Railroad Company was granted the privilege of changing its route and occupying parts of other streets to the distance of many squares. It is held by the court that the corporation accepted the grant and built its tracks to Carrollton avenue. If the City Council has the right to grant the use of one street to the distance of several squares, it has undoubtedly the right to extend the distance indefinitely. The act of the Legislature gives them no such right, but declares the occupancy of any street by a street railway company has a value for which it must pay the city. How easy it would be to defy the act of the Legislature, by a council complacent in its disposition to gratify corporations, by allowing a bid for a franchise on important thoroughfares, and then grant the privilege of occupying streets over which the franchise would be immeasurably advantageous and valuable to the corporation. The Crescent City Railroad Company got a valuable franchise without complying with the law, for which it paid nothing, and the City Council of New Orleans had the undoubted right to repeal it; to declare it null and void, and to require the corporation to occupy the territory to which it was legally entitled, and for which it paid the city.

Second. It is the repeal of the ordinance granting this franchise which the respondent pleads as against the mandamus. It is a com-

plete defence. The question presented is the enforcing of a duty from an officer by *mandamus*, whether it contemplates a public duty which the officer is required to perform. Is there any public duty imposed upon the officer, the City Engineer, to give lines and levels to the plaintiff corporation?

There is at issue between the city of New Orleans and the plaintiff corporation the construction of a contract. The city is not a party to this proceeding. The attempt is to force the specific performance of a contract through the respondent officer. The City Engineer is called upon to interpret that contract, and to reach him and to enforce this *quasi*-judicial function upon him without the appearance of the city, this court declares the repealing act null and void, and proceeds by *mandamus* to compel the specific performance of a contract. What will be the results of the decree?

In the case of Crescent City Railroad Co. vs. New Orleans & Carrollton Railroad Co., 48 An. 856, we held that there was lacking legislative permission from the City Council for the plaintiff corporation to occupy the roadbed of the defendant corporation, the Carrollton Railroad; that there was no right to occupy said roadbed, unless the grant could not be enjoyed without it. We held that under the issues presented in that case there was unoccupied territory over which the company could place its track. The whole matter of the location was, in fact, left to the discretion of the City Council, which could at any time locate the proper route, even over the road of the Carrollton Street Railroad.

The decree in this case is that lines and levels shall be given over the neutral ground. Where is this neutral ground? There are spaces on each side of the Carrollton Railroad tracks. Where shall the city official locate the roadbed?

If on the upper side the City Council may say this is not the proper location, and by ordinance, which it has the undoubted right to enact, say the roadbed must be located on the lower side.

Suppose the officer locates the road over the tracks of the Carrolltan Railroad Company, it will be in violation of the decree of this court, which said that no right in the Crescent City Railroad Company had been shown to authorize the occupancy of the Carrollton railway tracks. The decree, in its execution in this way, would require of the City Engineer to do that which we said in the last case referred to, the City Council had failed to do, and which

failure prevented the Crescent City Railroad Company from going over the Carrollton Railroad tracks. The decree makes the City Engineer the instrumentality to supply deficiencies in the legislation of the council, and it also imposes upon him a *quasi*-judicial function in the interpretation of a contract between the city and the Traction Company.

The City Engineer gave the Crescent City Railroad Company lines and levels on the upper side of the street. See cases *ut supra*. If the theory of the court is correct, that by accepting a gratuitous franchise it became perfected, the Crescent City Railroad Company was bound by this location, for it occupied the same, and commenced work along the location. But it was dissatisfied with the location, and subsequently procured an ordinance from the City Council, declaring that it should occupy the neutral ground of Carrollton avenue. See case of Crescent City Railroad Company vs. New Orleans & Carrollton Railroad Company, 48 An. 856. That neutral ground has not yet been ascertained. The council has failed to designate it. The City Engineer is required by the decree to do so. The most serious complaint, however, against the decree, is that it makes the writ of *mandamus* the means of inquiring into and interpreting a contract and ordering its specific performance in order to enforce the duties of a public officer, which are declared to be public, when, in fact, they arise out of a purely private obligation. The City Engineer, having at one time complied with his duty in giving lines and levels, he can not be compelled to perpetually perform his duty.

When the public officer is to be reached by *mandamus*, it must be when his duties, which are sought to be enforced are public, clear and unequivocal, in which there is no latitude for the exercise of discretion.

In my opinion this whole controversy should be left to the City Council of New Orleans.

Street railways are multiplying in a city in which the streets as a general rule are narrow. These corporations are fighting for territory. Efforts are daily made to occupy streets and the roadbeds of other roads. Cars are sent over the tracks in such number as now to threaten danger to life and limb. The City Council should not be hampered in its dealings with these corporations to prevent future calamities.

State ex rel. Railroad Co. vs. City Engineer.

A grave responsibility is now upon the City Council in dealing with the demands of these corporations, and the courts should reluctantly interfere, and set a rule for the guidance of the city authorities, which may prevent the application of a heroic remedy in the interest of the safety of the citizens.

There are times and there are occasions when vested rights give way to public safety. The time will come when the City Council will be compelled to give attention to the free use of the streets in removing the danger which is now so imminent to those who daily pass upon them.

The repealing ordinance recites, in my opinion, good reasons why the Crescent City Railroad Company should go back to its first grant. I think it should be respected on the ground that the council has the discretion to judge of the necessity of forbidding too many cars on a street, and the proper regulation of the same in the interests of the convenience and safety of the inhabitants.

## ON APPLICATION FOR A REHEARING.

BREAUX, J.   We have re-examined the questions involved in this case.

In the defence, before our decision was handed down, respondent suggested the difficulties confronting him in surveying the roadbed over the neutral ground of Carrollton avenue and averred the additional ground that the ordinance, under which relator holds, was repealed.

Under the rules of this court it is not possible, on the application for a rehearing, to have other issues considered than those previously submitted, particularly if not raised in the pleadings. The inability of the defendant to stand in judgment had not been pleaded, notwithstanding it is argued in one of the briefs filed by an *amicus curiæ* on rehearing.

But granted that the point has been pleaded for the sake of the argument. In our view, we state *ex industria; mandamus* could be issued. This officer had been selected by the city and the relator to make needful surveys to carry out the contract and deliver lines; we concluded that he should, in accordance with the terms of the contract, indicate the *locus* granted for the right of way, and that the difficulties suggested are not sufficient to prevent him from indicating what should be occupied as a roadbed.

If there are other interests concerned they must be urged by those by whom they are owned or by those who have a right to stand in judgment.

With reference to the repeal of the ordinance invoked as a defence, we cite the following decisions in support of the refusal to grant a rehearing: State ex rel. City vs. Railroad Co., 44 An. 526; City of New Orleans vs. Wardens, 11 An. 244.