# BOARD OF TRUSTEES OF THE SCHOOL CITY OF LAFAYETTE *v.* THE STATE OF INDIANA, EX REL. EATON ET AL.

### [No. 21,799.   Filed February 1, 1911.]

1. MANDAMUS.— *Contractual Rights.— Enforcement of.—* Though mandamus does not lie to enforce mere contractual rights of a private or personal nature, yet where the contract creates a public trust, or official duty, it may be enforced by mandate. p. 149.

2. SCHOOLS.—*Text-Books.—Contracts for.—Enforcement.—Mandamus.—*Mandamus lies to compel school officers to provide the text-books adopted and contracted for by the State Board of School Book Commissioners. p. 150.

3. MANDAMUS.—*Relators.—School Books.—Use of.—*A school book company that has secured, from the State Board of School Book Commissioners, the contract for supplying text-books for the public schools, is a proper relator in an action to mandate the proper school officers to provide such books for use in the schools. p. 153.

4. CONTRACTS.—*Statutes.—Schools.—Text-Books.—*The state school book law forms a part of any contract entered into between the State Board of School Book Commissioners and a company for text-books for the public schools. p. 154.

5. MANDAMUS.—*Complaint.—Sufficiency.—Schools.—Text-Books.* — A complaint by a school book company to mandate a school board to provide the text-books contracted for by the State, alleging that said relators "ever since the execution of said contract have been ready and willing to comply with all the terms and conditions" thereof, and that they have the books ready, and are willing to furnish them, as required by law, is sufficient, without negativing the provisos of the act of 1909 (Acts 1909 p. 377). p. 154.

6. MANDAMUS.—*Complaint.—Certainty.—*No greater certainty is required in complaints in mandamus than in other civil cases. p. 155.

7. MANDAMUS.—*Complaint.—Demand.* — *Schools.* — *Text-Books.* — A complaint to mandate school officers to provide the text-books contracted for, alleging that such officers have "refused and still refuse to use" such books, sufficiently shows a demand and refusal, if a demand and a refusal are essential. p. 155.

8. APPEAL.—*Briefs.—Waiver.—*Where appellant's brief fails to state any points or propositions, or to cite any authority, as to an alleged error, such error is waived. p. 156.

9. SCHOOLS.—*Text-Books.*—*Duty to Use.*—It is the imperative duty of the school officers of the State to provide the text-books contracted for by the State.  p. 156.

From Superior Court of Tippecanoe County; *Henry H. Vinton*, Judge.

Action by the State of Indiana, on the relation of Ira T. Eaton and others, against the Board of Trustees of the School City of LaFayette. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Stuart, Hammond & Simms*, for appellant.

*Will R. Wood*, for appellee.

Cox, J.—The relators, constituting a partnership, are the contractors for a series of writing-books to be furnished and supplied by them for the use of the common schools of the State for a period of five years from June 12, 1909. The contract was made by the relators with the State Board of School Book Commissioners, under the provisions and by authority of the act of March 2, 1889, and subsequent amendatory and supplementary acts. §6320 *et seq.* Burns 1908, Acts 1889 p. 74, Acts 1909 p. 377. The relators filed a petition in the trial court for a writ of mandate to require appellant to show cause why it should not be compelled to use said writing-books, and to compel it to make requisition for and use them in the common schools of the city of LaFayette during the term of the contract. The alternative writ was issued in accordance with the prayer of the petition, and appellant appeared and filed a demurrer for want of facts, which was sustained. Relators then filed an amended petition, and appellant unsuccessfully demurred to the amended petition and the alternative writ, the parties considering the alternative writ issued upon the original petition as applicable to the amended petition, the demurrer alleging a want of facts and a want of legal capacity in relators to sue. Appellant then answered and made return to the amended petition and alternative writ, by general denial, which was subsequently withdrawn, and specially,

at length.   A demurrer was sustained to the special answer, and, appellant refusing to plead further, the court rendered judgment ordering that a peremptory writ issue.   On appeal from that judgment the questions presented for the decision of this court by the assignment of errors arise from the action of the trial court in overruling the demurrer of appellant to the amended petition and alternative writ, and in sustaining the demurrer of the relators to the second paragraph of appellant's answer and return.

Under these assignments of error, appellant first contends that the relators are seeking to enforce what is wholly a contractual right, and that mandate is not available to

1.   them for that purpose.   That mandamus will not lie to enforce mere contractual rights of a purely private or personal nature is beyond question.   But it is settled that where the contract involves a public trust or an official duty, or, in the words of our code (§1225 Burns 1908, §1168 R. S. 1881), " an act which the law specially enjoins, or a duty resulting from an office, trust, or station," the remedy may be invoked if there be a clear legal right and no adequate legal remedy.   Merrill, Mandamus §16;   High, Ex. Legal Rem. (3d ed.) §§25-28;  2 Spelling, Injunctions (2d ed.) §1379;  *State, ex rel.,* v. *Cadwallader* (1909), 172 Ind. 619.

" The use of mandamus is limited to the enforcement of rights and duties imposed by law, and if the right or duty rests wholly upon contract the writ will not issue.   But a contract may create a relation upon which the law will impose rights and duties enforceable by mandamus.   *   *   * Rights under a contract made with public officers under statutory authority may be enforced by mandamus, unless, of course, an adequate remedy may be had by ordinary action."   19 Am. and Eng. Ency. Law (2d ed.) 742, 743.

The decisions in this State and other states almost all hold that if a contractual right is so inseparably bound with an imperative duty laid upon public officials by law as to require the performance of the duty of the officer to further

or secure such right, mandamus may be invoked to compel such official action. *Chapin* v. *Osborn* (1867), 29 Ind. 99; *City of Greencastle* v. *Allen* (1873), 43 Ind. 347; *Mayor, etc.,* v. *State, ex rel.* (1877), 57 Ind. 152; *Wren* v. *City of Indianapolis* (1884), 96 Ind. 206; *City of Greenfield* v. *State, ex rel.* (1888), 113 Ind. 597; *Ingerman* v. *State, ex rel.* (1891), 128 Ind. 225; *State, ex rel.,* v. *Bever* (1896), 143 Ind. 488; *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 117 Am. St. 370; *State, ex rel.,* v. *Cadwallader, supra; State, ex rel.,* v. *Marion Light, etc., Co.* (1910), 174 Ind. 622; *Smalley* v. *Yates* (1887), 36 Kan. 519, 13 Pac. 845; *State, ex rel.,* v. *School Directors, etc.* (1881), 74 Mo. 21; *Jones* v. *Bank of Cumming* (1908), 131 Ga. 614, 63 S. E. 36; *State, ex rel.,* v. *Bell* (1897), 49 La. Ann. 676, 21 South. 724; *Dennington* v. *Mayor, etc.* (1908), 130 Ga. 494, 61 S. E. 20; *Effingham, Maynard & Co.* v. *Hamilton* (1891), 68 Miss. 523, 10 South. 39; *State, ex rel.,* v. *Board, etc.* (1880), 35 Ohio St. 368. See, also, 26 Cyc. 284; 19 Am. and Eng. Ency. Law (2d ed.) 742, 743, 818.

The case of *State, ex rel.,* v. *Haworth* (1890), 122 Ind. 462, 7 L. R. A. 240, is good authority on which to rest the decision of the question in this case, if indeed it is not

2.  entirely controlling. In that case the validity of the school book law as originally passed in 1889 was determined, and also that mandamus is the proper remedy to compel a school trustee "to certify to the county superintendent of schools the number of text-books required by the children of the township for use in the public schools, and to procure and furnish such books as the law requires." In considering the question whether mandamus would lie, Judge Elliott, in the opinion of the court, said: "The question which here emerges is: Do the provisions of the statute concerning school trustees impose a duty or confer a privilege? Or, to particularize: Do those provisions require all township trustees to adopt the books and thus give practical effect to the statutory scheme as a complete and symmetrical

system, or do they put it in the power of each trustee to break the uniformity by refusing to procure the books? If it be true that township trustees may, at their pleasure, procure or refuse to procure the books for which the state board contracts, then the statute is nullified so far as it assumes to confer a right upon the contractor, or supply the people of the State with school books. Grant the right of each of the school trustees to determine for himself whether he will or will not procure the books, and it may result that the contract will operate in very few only of the townships of the State, and this, as we shall presently show, was a result the legislature intended to prevent." And after a consideration of the provisions of the act of 1889, *supra,* he answered the question and stated the conclusion in the following language: " From this synopsis these important things are made manifest: The books are to be secured for all the schools of the State. Everywhere throughout the statute the terms employed refer to the entire State; never to localities. Every provision indicates an intention to establish a uniform system, and not a provision indicates an intention to put it in the power of any officer to break the uniformity. The duty is enjoined upon all of the trustees of the State; none are excepted. The books are all to be furnished under the contract, and furnished without exception for all the schools of the State. The only method for securing the books is through contract. The conclusion that the law is obligatory upon every school trustee within the State is, therefore, irresistible. From beginning to end there is no hint or suggestion that some of the trustees may, and some may not, obey the law, and procure or decline to procure the books under the contract made by the state board. There is not the remotest suggestion from which it can be inferred that the system constructed shall be treated otherwise than as a unit. Nor is there a word from which it can be inferred that the legislature intended that inferior school officers might exercise discretionary power, and thus break and deform the uni-

formity and symmetry of the system. All we know of the history of the enactment, all we can discover as to the object of the statute, and all that we have learned of the evil sought to be remedied, combine with the words of the statute (words clear in themselves, but clearer still from the light shed upon them by extrinsic facts which it is our duty to know and which we do know) in support of the conclusion, that the statute creates a uniform system, requires that all books be procured under the contract, and that school trustees may not exercise discretionary powers, but shall perform the duty enjoined upon them by procuring and distributing the books selected by the state board of education as the law commands."

The decision of the court in the case just quoted from is strengthened, and the compelling force of the writ of mandamus more firmly justified, by section eleven of the supplemental act of 1891 (Acts 1891 p. 99, §6348 Burns 1908), which reads as follows: "The books which have been, or may hereafter be adopted by the State of Indiana for use in its common schools by virtue of this act, or the act mentioned in section one hereof, shall be uniformly used in all the common schools of the State, in teaching the branches of learning treated of in such books, and it shall be the duty of the proper school officers and authorities to use in such schools such books for teaching the subjects treated in them."

The relators here are under a duty imposed by the contract with the State Board of School Book Commissioners, into which the before-named statutes enter, to furnish a certain series of writing books to the common schools of the State, of which the schools of the city of LaFayette are a part, and as the law enters into the contract the imperative duty is on appellants to procure these books through the channels the law provides and to use them in the schools under their control. To say that this duty cannot be compelled by mandamus is to admit that the purpose of the legislature in enacting the laws in question may be nullified by the various

school authorities throughout the State, and the schools by them relegated to the same unsatisfactory condition in the diverse use of books and the frequent change of them, from which the lawmaking power intended a rescue.

It is next insisted that if mandate be a permissible remedy to enable a taxpayer and patron of the schools of the school city which appellant represents to compel appellant to

3.   use in its schools books adopted and contracted for by the State Board of School Book Commissioners, pursuant to law, nevertheless, this remedy is not open to the relators, for the reason that this would permit them to enforce performance of their contract by mandamus.   Therefore, they have no legal capacity to sue, and are not proper relators.

In the case of *Union Pac. R. Co.* v. *Hall* (1876), 91 U. S. 343, 354, 23 L. Ed. 428, it was said by Mr. Justice Strong: " The question raised by the objection, therefore, is whether a writ of mandamus to compel the performance of a public duty may be issued at the instance of a private relator. Clearly in England it may.   Tapping, Mandamus p. 228, asserts the rule in that country to be, that, ' in general, all those who are legally capable of bringing an action are also equally capable of applying to the Court of King's Bench for the writ of mandamus.'   This is true in all cases, it is believed, where the defendant owes a duty, in the performance of which the prosecutor has a peculiar interest.   *   *   *   In this country there has been diversity of decision upon the question whether private persons can sue out the writ to enforce the performance of a public duty, unless the non-performance of it works to them a special injury."

The relators here are seeking to compel the performance by appellants of what is clearly an imperative public duty, an act which the law specially and positively enjoins upon them, without discretion in the doing of it or the manner of doing it.   That its performance will result in benefit to them, in that, in a small measure, it contributes to the fulfilment of their contract with the State, can neither alter the character

of the action sought to be compelled nor destroy relators' right to the relief.   The doubt has never been of the right of a person having a special interest in the subject-matter involved in the official act which the writ is asked to compel, but whether a person having only such an interest as was held in common by many others has sufficient interest to qualify as a relator.   Merrill, Mandamus §§228–230; 2 Spelling, Injunctions (2d ed.) §§1625, 1626; High, Ex. Legal Rem. (3d ed.) §431; 26 Cyc. 401, 405; 13 Ency. Pl. and Pr. 630–638; 19 Am. and Eng. Ency. Law (2d ed.) 742; *State, ex rel.,* v. *Marion Light, etc., Co., supra;* note c. to *State* v. *Gardner* (1903), 98 Am. St. 858, 865.

In practically all the decisions of this court heretofore cited there was involved the question of the propriety of mandamus to force official action in aid of contract rights on the petition of one having special rights under the contract, and the decision in each instance approved the employment of the remedy.

Appellant further urges that the complaint and alternative writ are insufficient and defective, in that both wholly fail to negative specifically and particularly certain provisos in section two of the act of 1909, *supra,* which placed conditions and restrictions upon the State Board of School Book Commissioners and contractors for books in the making of a contract and furnishing books thereunder.   It is unnecessary to set out these provisos, seven in number.   They involved matters to be met and settled by the board at the time of making the contract.   The provisions of the law entered into and formed a part of the contract. *City of Auburn* v. *State, ex rel.* (1908), 170 Ind. 511.   The petition and the alternative writ averred that " said relators ever since the execution of said contract have been ready and willing to comply with all the terms and conditions thereof, and that they have complied with all the terms and conditions thereof; that they have had at all times and now

have copy-books and writing supplies sufficient to furnish all of the common schools of the State of Indiana; that they have at all times been ready and willing and are now ready and willing to fill all and any requisitions that may be placed with them or with the agencies and school depositories and depots for school supplies, as provided for and regulated by law." This was sufficient. §376 Burns 1908, §370 R. S. 1881; *Firemans Fund Ins. Co.* v. *Finkelstein* (1907), 164 Ind. 376; *Voluntary Relief Department, etc.,* v. *Spencer* (1897), 17 Ind. App. 123; *Aetna Ins. Co.* v. *Kittles* (1881), 81 Ind. 96.

6. In an application for mandamus no greater certainty is required than in stating the cause of action in other proceedings. 13 Ency. Pl. and Pr. 674.

It is also contended by appellant that the petition and the alternative writ are insufficient on demurrer, because no demand and refusal are shown. The petition and the alternative writ contain the following averments: 7. " That the above-named defendant has refused and still refuses to use the copy-books and writing supplies of these plaintiffs, and has refused and still refuses to supply the school children of the common schools in said city of LaFayette, in Tippecanoe county, Indiana, with said copy-books and writing supplies, and that said defendant has refused and still refuses to make requisition upon these plaintiffs, or upon the proper officers, as hereinbefore stated appointed by law to supply to them said copy-books and writing supplies, notwithstanding it is compelled by the laws of the State of Indiana to furnish said writing-books and writing supplies to all the pupils within its jurisdiction and under its control."

It may well be doubted whether in a case like this, where the law unconditionally and imperatively demands the doing of the act, performance of which is asked, a demand is essential. 26 Cyc. 442, 443; 19 Am. and Eng. Ency. Law (2d ed.) 759; 2 Spelling, Injunction (2d ed.) §1381. In the section from the text-book last cited it is said: "Where no

such general interests are involved and merely private rights are affected, the relator must, in a proceeding by mandamus, allege and prove demand and refusal by the person or persons whom it is sought to coerce by the writ; but where a duty is strictly of a public nature, as where it is due by a public officer and is not a special duty affecting peculiarly the relator, there is no one specially empowered to demand its performance and there is no necessity for a demand and refusal. In such case the law imposing the duty is a continuing demand, and neglect of performance a continuing refusal." But if a demand was necessary, as appellant's counsel earnestly argue, it would be unnecessary after the refusal alleged in the petition and writ, and heretofore set out. *Evansville, etc., R. Co.* v. *State, ex rel.* (1898), 149 Ind. 276. It is manifest that the trial court did not err in overruling appellant's demurrer to the amended complaint and the alternative writ.

In support of the assignment that the trial court erred in sustaining the relators' demurrer to the second paragraph of the answer and return, appellant has stated no point or proposition and cited no authority, and under the rules of this court we would be justified in considering such assignment waived. The answer is long and argumentative. It avers that appellant controls eight ward schools and a high school in the city of LaFayette, with an aggregate enrollment of 2,690; that it has for many years taught writing in its schools, without copy- or writing-books, under a supervisor of penmanship; that the writing-books contracted for by the State are worthless; that it has not made requisition for or used the writing-books, because no necessity exists for their use; that to compel them to use the books would add to the expense of the pupils, without corresponding benefit. The whole answer is drawn on the theory that the various school boards and trustees in the State, having control over the public schools, were left with a discretion, under the law, to use or not to use the books

contracted for by the State Board of School Book Commissioners. As we have seen, this is not the case, for reasons elsewhere stated in this opinion. It follows that the answer is bad.

No error being shown, the judgment of the trial court is affirmed.