[Civ. No. 6427. First Appellate District, Division Two.—October 19, 1928.]

EARL E. JENSEN, Director of the Department of Institutions of the State of California, Petitioner, v. C. F. McCULLOUGH, as Treasurer of San Benito County, Respondent.

U. S. Webb, Attorney-General, and R. L. Chamberlain and Charles A. Wetmore, Jr., Deputies Attorney-General, for Petitioner.

Wyckoff & Gardner and A. M. Runnells for Respondent.

NOURSE, J.—This is an original proceeding in *mandamus* to require the respondent to pay to the state treasurer moneys claimed to be due the state by reason of commitments from the county of San Benito to the Sonoma State Home. The petitioner is the director of the department of institutions of the state and the respondent is the treasurer of San Benito County. The controversy arises over the claim of the respondent that the act of the legislature (secs. 2192 and 2193, Pol. Code), which places this charge upon the county from which the commitments are made, is unconstitutional. The respondent has appeared by both demurrer and answer and the whole cause has been submitted on these pleadings.

The first ground of demurrer is that the petition fails to state sufficient facts in that it does not show any sum to be owing the state because it alleges that in May and December, 1927, certain sums became due and that in May and December, 1926, the respondent failed and refused to pay such sums. The error is plainly a clerical one—the figures 1926 should read 1927. The petitioner has asked leave to make the correction on the face of the petition and such leave will be granted. This disposes of the point raised.

It is argued that the petition is insufficient because it fails to allege a prior demand upon respondent to do the act prayed for in the petition. There is no quarrel with the general rule that, in ordinary cases of *mandamus,* the petition must allege that demand was made upon the re-

spondent to perform the act and that he refused to comply. But there are two well-recognized exceptions to this general rule—first, that a demand is excused when the act is a mere public duty affecting the public at large and in which the petitioner has no immediate benefit, and, second, that a demand is excused when the attitude of the respondent shows that it would have been refused if made. Both of these exceptions are applicable here. ■ The petitioner is a state officer proceeding under a general state statute for the benefit of the state and without any private or personal interest in the subject matter. In such a case the law itself stands in lieu of a demand and it is not necessary to allege that a specific demand has been made. (16 Cal. Jur. 771, 772.) ■ It also appears from the admissions in respondent's brief that any demand upon him would have been futile. He says: "But the treasurer resists and will continue at all times to resist the efforts of the state to compel him to pay in any such unauthorized manner as is here attempted." The respondent further admits that, for a period of thirty years, the county of San Benito has contended that it cannot be compelled to make payments to the state under Political Code, section 2192. As the controversy between the state and the county over this long period of time has been based upon the question of the constitutionality of section 2192, and as that is the real basis of the defense in this proceeding, it is apparent that the respondent would not have complied with any demand in any form for the payment of these sums. ■ The petition does allege, in form of recital, that the respondent refused to pay "upon the order of the controller." If this is not sufficient as an allegation that demand was made, it is sufficient to show that respondent is not prejudiced by the failure to allege demand in specific terms and to show that it would be an idle act to sustain the demurrer and require petitioner to allege specific demand or to allege the admitted fact of the futility of making a demand.

■ It is argued that the petition is insufficient because it does not allege facts showing that said amounts have ever been found to be due to the state. The petition alleges that at the time of the settlement with the state the respondent refused to pay upon the order of the controller the amounts found to be due to the state. This allegation is sufficient

to raise the issue of the duty of the respondent under section 2193 of the Political Code. ■ If the amounts demanded are not in fact due that is a matter of defense for the respondent in this proceeding. The duty of the county treasurer is to pay out moneys in the treasury on warrants when they are based upon orders of the board of supervisors or upon orders of the superior court, "or as otherwise provided by law" (sec. 4101, Pol. Code, subd. 7). An exception to the rule that the treasurer can pay only upon warrants issued by the auditor is made in cases of "Settlement with the State." (Subd. 6, same section.) Section 2193 expressly fixes upon the county treasurer the liability to pay to the state treasury the sum of twenty dollars monthly for each person committed to the home from the county and requires the county auditor to include in his report to the state controller the amount due the state under the act. When the auditor performs this duty the amount due the state is fixed and the treasurer's duty to pay the amount so fixed follows. However, when either auditor or treasurer fails to perform his duty under the act, the director of the state department of institutions is empowered to proceed against the treasurer by writ of mandate to require him to pay to the state the amounts found due, and in such a proceeding one of the issues of fact to be tried is the amount due under the terms of the act. In this respect the proceeding is similar to that in *mandamus* against the trustees of reclamation districts, authorized by section 3457 of the Political Code, where it is provided that if a controversy arises as to the amount due a claimant against the district the court must determine the same in the manner provided for determining controversies in other civil actions and cause a writ to issue to the trustees requiring them to draw their warrant for the amount found due. So in section 2193 the petitioner herein is expressly authorized to require the county treasurer by writ of mandate "to pay to the state treasurer upon an order of the controller all amounts found to be due to the state." By the same section the county auditor is required to include in his report to the state controller "the amounts due the state under the act." ■ In finding the amount due under this section the auditor need only compute the fixed charge on the basis of the number of commitments

made from his own county—a finding based solely on public records—without any room for discretion or independent judgment. We hold, accordingly, that the auditor does not exercise any judicial function in determining the amount due the state and that his failure to comply with the statute is no defense in this action against the treasurer because section 2193 declares it shall not be a defense. Thus, the point is not available on the demurrer to the petition because the petition recites the treasurer's failure to pay the "amounts found to be due to the state." If the auditor has not in fact determined these amounts, that is a matter to be raised by answer and this, in turn, would raise the issue before this court as to what was in fact due.

The respondent argues that section 2193 is invalid because it conflicts with sections 4041 and 4101 of the Political Code relating to payment of claims against the county. The point is that the two later sections relating to the approval of claims by the supervisors and the payment on warrants drawn by the auditor conflict with section 2193, which authorizes the treasurer to pay the claims arising under that section upon the order of the controller. The difficulty with the argument is that it is based upon wrong premises. Section 4041 provides that the supervisors shall pass on all claims against the county "except salaries of officers, and such demands as are authorized by law to be allowed by some other person or tribunal." Section 4101 provides that the treasurer shall disburse the funds only upon warrants from the auditor, "or as otherwise provided by law." These exceptions fully cover the special provisions in section 2193 relating to the payment of claims arising under it.

It is also argued that the section is void because it relieves the state from alleging that there are funds in the county treasury applicable to the payment of the claim, whereas, in other actions by individuals in *mandamus* it is necessary to allege that the respondent has funds within his control applicable to the payment of the demand which is sought to be enforced. From this it is argued that the section is in conflict with the interpretations which have been put on the general sections of the Code of Civil Procedure relating to proceedings in *mandamus* and that it therefore offends the provisions of subdivision 3 of section

25 of article IV of the state constitution. The inhibitions of this section of the constitution are that the legislature shall not pass any local or special law regulating the practice of courts of justice. The respondent refers to *Meyer* v. *City and County of San Francisco*, 150 Cal. 131 [10 L. R. A. (N. S.) 110, 88 Pac. 722], *State Commission* v. *Welch*, 20 Cal. App. 624 [129 Pac. 974], *People* v. *Central Pac. R. R. Co.*, 83 Cal. 393 [23 Pac. 303], and *City of Tulare* v. *Hevren*, 126 Cal. 226 [58 Pac. 530]. It would serve no purpose to discuss any of the cases cited. The rule applicable to the situation before us is stated in the later case of *People* v. *Central Pacific R. R. Co.*, 105 Cal. 576, 589 [38 Pac. 905, 908], where it was held that, in proceedings to enforce obligations to the state, the legislature "may prescribe such procedure as may best avail for that purpose, irrespective of the mode of procedure provided for the determination of controversies between individuals." Many later authorities may be found to the same effect: *Selowsky* v. *Superior Court*, 180 Cal. 404, 410 [181 Pac. 652]; *Brambini* v. *Superior Court*, 192 Cal. 19, 26 [218 Pac. 569]; *In re Sutter-Butte By-Pass, etc.*, 191 Cal. 650, 671 [218 Pac. 27]; *Fleming* v. *Superior Court*, 196 Cal. 344, 351 [238 Pac. 88]; *Gridley* v. *Fellows*, 166 Cal. 765, 768 [138 Pac. 355], and *City of Stockton* v. *Ellingwood*, 78 Cal. App. 117, 120 [248 Pac. 272].

That the act does not contravene the provisions of subdivision 9, section 25, article IV, of the constitution prohibiting local and special laws regulating county business is so obvious that we merely mention it to show that the point has not been overlooked.

It is argued that the petitioner has a plain, speedy, and adequate remedy in the ordinary course of law and that therefore *mandamus* should not issue. This question of the speed and adequacy of the legal remedy is always a matter to be determined by the court to which the application is made. When the question presented is one of statewide concern involving the construction of a general state statute the courts have been more liberal in entertaining the proceeding in *mandamus*.

As the matter has been pending in this court for many months and has been fully heard and briefed by the

respective parties it would be an abuse of discretion to refuse to entertain the proceeding at this time.

 Section 2193 is attacked upon the ground that it violates section 12 of article XI of the state constitution, which prohibits the legislature from levying a tax upon the county for county purposes. There is, of course, no attempt to levy a tax. The act merely makes a charge against the county for the support of its insane wards just as the legislature has made a charge upon the county for the support of its indigent sick, its dependent poor, its orphans, and for the maintenance of persons charged with or convicted of crime.

 But respondent states that if he be wrong in this view he might be right in another—that it is a tax for state purposes and hence in violation of section 14 of article XIII of the state constitution. That the act does not purport to levy a tax is obvious. The argument that the act is unconstitutional because it attempts to appropriate county moneys for the support of a state institution is without merit because the act makes the charge a direct one against the county for the support of the patient, and whether the state should require the county to maintain a home within its borders for the feeble-minded, or whether it should require the county to pay its proportionate share of the expense of maintenance of its feeble-minded in a state home is no concern of the county. It being a mere agency of the state it is subject to the direction of the state in matters of this kind. (*County of Sacramento* v. *Chambers*, 33 Cal. App. 142, 145 [164 Pac. 613].)

 It is then said that the act violates section 31 of article IV of the state constitution as providing for a gift to some unknown or undisclosed donee who might be liable for the care and maintenance of the person committed. As we have pointed out, the act makes the charge a direct charge against the county from which the commitment is made. The fact that it also provides that the judge of the superior court shall order that the party liable for the support of the feeble-minded person shall pay to the hospital stated sums for the support of the inmate does not constitute a gift of public money to those who are not found or who are not ordered to pay.

We have covered each point raised by the respondent in support of his demurrer to the petition, and, for the reasons given, the demurrer is overruled. There are, however, certain considerations governing legislation of this character which are not discussed in the briefs, but which may be adverted to at this time. ▉ The state constitution is a limitation on the powers of the legislature and not a grant of power. There are, of course, many provisions found therein which are express grants of power, but these are made, not because an express grant is necessary, but, because of some limitation on the power of the legislature, the presence of the express power is in doubt. ▉ Thus, in the absence of a limitation, and without an express grant, the legislature has the inherent right to subdivide the state into political subdivisions and to prescribe the mode of government, the powers, duties, and obligations of each of such subdivisions and of the officers and employees created for the purpose of· exercising, on behalf of the state, the governmental functions of such subdivisions. ▉ Having heretofore discussed the limitations which surround the power of the legislature in matters of this kind, and having found none of them applicable to the case in hand, we are left with the inherent power of the legislature, in the exercise of its police power, and for the general welfare of the state at large, to provide for the care and maintenance of its citizens. Without specifying the particular acts, we know that the state has provided for the care and maintenance of the indigent, the orphans and half-orphans, the blind, the insane, the feeble-minded, the juvenile delinquents, the criminal and other dependent persons. ▉ In the absence of some limitation on the power of the legislature, there is no sound reason why the entire burden of the care and maintenance of such dependent classes could not be placed upon the political subdivisions of the state. (*Sacramento v. Chambers*, 33 Cal. App. 142, 145 [164 Pac. 613].) If, therefore, in the wisdom of the legislature a portion of this burden is ordered to be borne by the political subdivisions and a portion by the state as a whole, the legislature is acting within its power, and the question of the wisdom of the action is, of course, not one for the courts to determine.

▉ Thus, the legislature has the power to determine that each political subdivision should maintain a home for

the care of its feeble-minded, or it could provide a state home, or homes, for the purpose and bear all the burden of maintenance, or it could require each political subdivision to contribute a share of the expense of the maintenance of the individual. In the case at hand the legislature has provided a home where such patients may be kept and has fixed a uniform charge upon every county in the state determined by the number of patients committed from each county. This plan has been in operation for more than twenty-five years and has been followed by every county in the state but San Benito. A similar situation arose in *County of Los Angeles* v. *State,* 64 Cal. App. 290, 297 [222 Pac. 153, 156], where the county of Los Angeles had refused to pay the state charge for the care and maintenance of wards committed to a state institution under the Juvenile Court Act. (Stats. 1915, p. 1225.) In speaking of the obligation of the county under the act the court said: "It was the duty of the court of Los Angeles County to make the order, and under the law, as we read it, it was also the duty of Los Angeles County to provide for the maintenance of its own wards and not to shift that burden upon the state or upon other counties of the state who, following the statute, had made provision for the support and maintenance of their wards."

Upon the suggestion of the court the cause was submitted upon the demurrer and answer, with the understanding that both parties might produce their proof by affidavits, as the only matters in dispute were of public record. Counsel for respondent now complain that they did not formally stipulate to the use of affidavits and they move that those filed by petitioner be stricken from the files. At the same time they have filed counter-affidavits in reply. Without approving the procedure followed by respondent his motion is granted and all affidavits filed by petitioner and by respondent are accordingly stricken. There is no call for any further hearing, however, as the respondent's answer does not raise any triable issue. ■ The denial upon information and belief of the regularity of the commitment of two of the inmates of the home is a denial of matters of public record which should have been denied positively or admitted to be regular. Such denials are sham and raise no issue. ■ The denial that nothing was due the state on account of the

claims set forth in the petition raises a question of law alone in the face of the admission that nothing was paid and the failure to deny any of the ultimate circumstances specified in the statute under which the claims are made valid charges against the county. The denial that the state controller did not make a demand or order to pay upon the respondent does not call for much comment. The argument in the brief is that the courteous letter of notification from the controller stating the amount due should not be treated as an explicit demand for payment. The denial upon information and belief that the judges of the superior court of San Benito County failed to perform their duty to inquire into the financial condition of the parents or guardians of those committed is sham and raises no issue. The denials that no person or tribunal has determined the amount due the state and that no claim has been presented to the board of supervisors do not call for a trial because the law does not require that either of these things must be done, as we have heretofore pointed out. If the commitments were not made as alleged in the petition or if the individuals were not confined in the institution in the manner and for the periods alleged, or if the statutory charges for the care of these individuals in the state home were in fact paid, any one of these matters would constitute a defense to this petition, but the fact that the respondent is a public official does not alter the application of the rule that one may not raise an issue dependent wholly upon public records by a denial upon information and belief alone.

Let a peremptory writ issue as prayed.

Koford, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 15, 1928, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 17, 1928.

All the Justices present concurred.