**ASSOCIATION OF CLASSROOM TEACHERS OF OKLAHOMA CITY, INC.,**
a corporation, Petitioner,

v.

**INDEPENDENT SCHOOL DISTRICT #89 OF OKLAHOMA COUNTY, Oklahoma, et al., Respondents.**

No. 48806.

Supreme Court of Oklahoma.

Sept. 8, 1975.

Rehearing Denied Sept. 23, 1975.

**1172**

Lana Jeanne Tyree, Benefield, Shelton, Lee & Tyree, Oklahoma City, for petitioner.

J. Harry Johnson, Oklahoma City, for respondents except Edward Soule.

Edward E. Soule, Oklahoma City, for Edward Soule.

SIMMS, Justice:

The Association of Classroom Teachers of Oklahoma City, Inc., hereinafter referred to as ACT, as the collective bargaining agent for professional educators (teachers) employed by the Respondent School Board, through their selected member of a tripartite advisory fact-finding committee and the School Board of Independent District # 89, through their selected member of the tripartite committee, have reached arbitration impasse in the selection of a neutral third party to serve on a contractually provided fact-finding committee in the capacity of chairperson.

ACT requests this Court to assume original jurisdiction and prays for mandamus to require selection of the third neutral party from a list provided by the American Association of Arbitrators, hereinafter called the AAA, in alleged compliance with the written collective bargaining agreement.

Respondents contend the contractual provisions relating to selection from an AAA prepared list is permissive, as opposed to imperative, and insists the third neutral fact-finder be a "prominent" citizen of Oklahoma City and refused to agree to any of the persons whose names are contained in the list furnished by the AAA.

The Oklahoma Statute controlling is 70 O.S., 1971, § 509.7, which reads:

"A procedure for resolving impasses will be developed by the Board of Education and the representatives of the professional or non-professional organization; if agreement cannot be reached, the items causing the impasse shall be referred to a three member committee. This committee shall consist of one member selected by the representatives of the professional organization or the nonprofessional organization as the case might be, one member selected by the local board of education and *the third member selected by the first two members,* and this third member shall serve

as chairman of the committee. This committee shall meet with the board of education or its duly designated representatives and the duly designated representatives of the professional or nonprofessional organization for the purpose of factfinding. Subsequently, this committee shall make recommendations to each of the above parties." [E.A.]

Readily observable is the omission of any procedural process to select the third neutral member of the fact-finding body in the event the two representatives cannot agree upon this third member.

Moreover, pursuant to the provisions of 70 O.S.1971, § 509.6, an agreement outlining negotiating procedures was entered into between ACT and the School Board, which agreement was reduced to writing, executed by the parties bound thereby, and provides, inter alia:

ARTICLE III–RESOLUTION OF IMPASSE; Section 3–2 Fact-finding; Section 3–2–2

"Within ten (10) days of the call for fact-finding, a neutral advisory committee of three (3) persons shall be selected. The Board shall designate one member of said advisory committee, the Association shall select one member, and the two advisory members so selected shall then select a third member who shall become the chairperson of the committee. *This third member may be selected from a list provided by the American Arbitration Association.*" [E.A.]

The issue herein presented is apparently one of first impression for neither side has cited any authority in their briefs from any jurisdiction pointing toward an immediate legal solution to the issue, nor has this Court, after diligent research, discovered any in-point case-law guidance.

Because approximately 2800 professional educator's 1975–76 contracts are being delayed because of the impasse, and because School District budgeting and administrative planning are being delayed, we immediately address the issues.

## I. IS MANDAMUS A LEGALLY PERMISSIVE REMEDY?

Title 12, O.S.1971, § 1451, defines the office of writ of mandamus as compelling a "board or person" to perform any act which the law specifically enjoins as a duty, resulting from an office, trust, or station. The legislature, by the enactment of 70 O.S.1971, § 509.1 et seq., has imposed a legal duty upon local boards of education and representatives of both professional and non-professional educators to negotiate in good faith on items affecting the performance of professional services. Under Oklahoma law, the statutory right of professional educators to collectively bargain or negotiate is counterbalanced by the statutory language which makes the provisions of 70 O.S.1971, § 509.7 the exclusive recourse of professional educators in agreeing upon the terms of their employment and makes it illegal to strike or threaten to strike.

We therefore concluded that the statutes have imposed a legal duty as contemplated by 12 O.S.1971, § 1451, supra, upon boards of education and educators with regard to negotiating contracts and resolving impasse in negotiations. However, 12 O.S.1971, § 1452, provides mandamus may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law.

The availability of additional legal remedies for Petitioners is plain.

The filing of an action in the District Court for specific performance of the Negotiating Procedures Agreement is recognized at law. *Trubowitch v. Riverbank Canning Company,* 30 Cal.2d 335, 182 P.2d 182; *Berkovitz v. Arbib & Houlberg,* 230 N.Y. 261, 130 N.E. 288; *Nippon Ki-Ito Kaisha v. Ewing-Thomas,* 313 Pa. 442, 170 A. 286, 93 A.L.R. 1067.

Under the existent circumstances, a declaratory judgment action might be authorized under the provisions of 12 O.S. 1971, § 1651 et seq. Mandatory injunction may issue to compel affirmative perform-

ance of an act in a labor relations case in appropriate circumstances. See: 51B, C. J.S., § 782 (pg. 37) and cases cited therein.

Vital to this case is resolution of the issue of whether or not the "plain" remedies available to Petitioners in the District Court of Oklahoma County are *adequate*.

■ The question of whether a remedy is adequate is one of fact to be determined by the court as a matter of discretion in the light of the facts of the particular case. *Jensen v. McCullough*, 94 Cal.App. 382, 271 P. 568, mandate corrected 99 Cal.App. 217, 278 P. 240; *State, ex rel. Roberts v. Wilson*, Mo.App., 297 S.W. 419.

■ Mandamus ordinarily will not lie to enforce contractual rights, but where a contractual obligation is also imposed by law it may be enforced by mandamus. *Lafayette School Board v. State*, 175 Ind. 147, 93 N.E. 851; *Titus, Petitioner, v. Lawndale School Bd. Dist., et al., Respondents*, 157 Cal.App.2d 822, 322 P.2d 56 (1958).

■ The legal duty imposed by law regarding resolution of impasse in Board-Teacher labor relations is unequivocal. Also, in this case there exists a duty also imposed by contract. Therefore, in the exercise of sound judicial discretion, this Court may assume original jurisdiction and entertain mandamus.

The importance of a properly administered, progressive, and harmonious secondary school system is vital to the welfare of Oklahoma City, and more importantly, the State of Oklahoma at large. This being conceded by all parties hereto, and because the issue herein being litigated having been the subject of legislative enactment, we are confronted with a matter of pressing, wide and concerned, public policy.

This Court held in *State, ex rel. Blankenship v. Atoka Co.*, Okl., 456 P.2d 537 (1969), in syllabus number 1, by the Court:

"In an original application in this court for a writ of mandamus, where the public nature and importance of the case appear to justify it, this court will entertain original jurisdiction, and where a clear legal right thereto is made to appear, the writ will be issued."

■ It must be emphasized that where a clear and adequate remedy at law exists and petition in error and appeal will lie from an adverse order of a lower court to this Court, this Court should and will continue to refuse to entertain mandamus, but where normal time consuming trial and appellate procedure involving a matter of a pressing public nature could lead to potential disruption or damage to a publically supported educational system, it is then only such exigent circumstances as herein described that this Court will consider mandamus.

We therefore conclude that the Petitioner may resort to mandamus in the instant case because proceeding through the trial court and then to this Court would not suffice as an adequate legal remedy.

## II. PROCEDURE ON IMPASSE

The existence of impasse is conceded by both parties.

Title 70, O.S.1971, § 509.7, supra, enunciates the procedures to be employed in the event of impasse. Article III, § 3–2–2 of the Negotiation Procedures Contract in its procedural aspects taken from § 509.7, supra. However, the following additional language is contained in Article III, § 3–2–2 as supplementary to the statutorily prescribed procedure, "This Third member *may* be selected from a list provided by the American Arbitration Association."

Petitioner ACT argue the selection of the third member of the tripartite advisory committee from a list provided by the AAA becomes mandatory if the third party is not otherwise agreed upon by the other two selectees. Respondents contend the use of the word "may" as contained in the contractual sentence pertaining to selection from a list provided by the AAA is permissive, and neither imperative nor mandatory, and they may rightfully refuse to

agree to the selection of any third party from such a list.

Pre-requisite to the determination of whether in the contract at bar the word "may" contained in the contract is "mandatory" or "permissive" we must determine the enforceability of arbitration statutes and contracts.

██ The courts generally look with favor upon arbitration statutes and contracts as a shortcut to substantial justice with a minimum of court interference. *Brennan v. Brennan*, 164 Ohio St. 29, 128 N.E.2d 89, 50 A.L.R.2d 1259; *McRae v. Superior Court of Los Angeles*, 221 Cal.App.2d 166, 34 Cal.Rptr. 346, 98 A.L.R.2d 1239.

██ The effect of *Rederiaktiebolaget Atlanten v. Aktieselskabet, etc.*, 252 U.S. 313, 40 S.Ct. 332, 64 L.Ed. 586, is that the same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally. Thus, according to the general rule, the courts seek to give effect to the intent of the parties evidenced by the arbitration agreement itself.

██ The Negotiation Procedural Agreement under consideration in this case is the product of statutory authorization and the intent of the parties, therefore is governed by both the statutes and the written agreement itself and the terms of the statute serve as a guide for interpretation of an arbitration agreement. *Tennessee Coal, Iron & R. Co. v. Roussell*, 155 Ala. 435, 46 So. 866; *Crofoot v. Blair Holdings Corp.*, 119 Cal.App.2d 156, 260 P.2d 156.

### III. INTENT OF THE PARTIES

The purpose of the Act authorizing collective bargaining between school employees and employing school districts is clearly enunciated in 70 O.S.1971, § 509.1:

> "It is the purpose of this act to strengthen methods of administering employer-employee relations through the establishment of an orderly process of communication between school employees and the school district."

██ Section 509.6 mandates good faith negotiations. Presumptively, the intent of the parties at the time of execution of the Negotiations Procedure Contract in this case must have contemplated good faith negotiations to finality, notwithstanding impasse. This presumption is founded on both the statute and contractual provisions relating to impasse procedures as above quoted. It can be said with certainty that the parties to this agreement did not contemplate circumvention of the intendment of the statute and contract by failing to agree upon the third member of the tripartite fact-finding committee.

██ In treating the intent of the parties in the use of the word "may" in the selection of the third fact-finding chairperson, we observe that, as a general rule, the word "may" is an auxiliary verb expressing permission, competency or ability. *U. S. v. Lexington Mill Co.*, 232 U.S. 399, 34 S.Ct. 337, 340, 58 L.Ed 658. But as stated in Black's Law Dictionary, 4th Ed., p. 1131, "Regardless of the instrument, however, whether constitution, statute, deed, *contract*, or whatnot, courts not infrequently construe 'may' as 'shall' or 'must' to the end that justice may not be the slave of grammar [citing cases]."

This Court construed the word "may" as used in a statute as the equivalent of "must" in *State, ex rel. Board of Education of City of Tulsa v. Morley, et al.*, 168 Okl. 259, 34 P.2d 258 (1934).

Analogous to the case at bar is the mandamus action of *Local 1724 Baker, American Federation of State, County, Municipal Employees, AFL–CIO v. Board of County Commissioners*, Ore.App., 482 P.2d 764 (1971), which turned upon the construction of the word "may" as used in an ordinance pertaining to the election by county employees of a representative bargaining unit. The ordinance provided:

> "* * * [T]he substantiation petition shall be submitted to a third party for examination. The third party may be the State Concilliation Service or some

other individual or organization upon which the Board and the employee organization may agree * * *."

Petitioner Local 1724B was a collective bargaining agent representing Lane County, Oregon, employees. Petitioner therein contended that the language of the ordinance should be interpreted to mean that the parties may attempt to choose a mutually agreeable third party, but if agreement is impossible, then both parties *must* submit the petition to the State Concilliation Service. Respondent Board of County Commissioners argued that the third party must be agreeable to both parties and the language in the ordinance was mentioned merely as an example of the type of organization which the parties might choose.

The Oregon Court construed the word "may" as meaning "shall", stating: "Any interpretation of the provision of the instant ordinance which would allow one of the parties to thwart the ordinance's purpose would serve to make the ordinance inoperative and would clearly go contrary to the intent of the drafters."

Considering both the provisions of 70 O.S.1971, § 509.1, supra, as well as the contract provisions contained in · Article III, Section 3–2–2, they each make mandatory the selection of one member of the tripartite *fact-finding committee by each* of the parties to the agreement and a mandatory duty is imposed upon the two appointees to select a third member. The parties to this action, recognizing this legal obligation, mutually agreed in writing that the third member "may" be selected from a list provided by AAA. The clear intent of the parties had to be that in the event a third fact-finder could not be agreed upon, resort be had to the American Arbitration Association for selection of the neutral.

In this case, "may" means "shall". To hold otherwise would defy fundamental logic in that either of the contracting parties could render the agreement meaningless in that if the obligation to submit to a list of neutrals furnished by the AAA were not imperative, either party could continue the impasse by their refusal to agree to any neutral. A continuation of the impasse would render the agreement nugatory and would defeat the purpose and intent of the statute.

It is universally recognized by all legal writers that impasse may be solved by what is technically called arbitration, mediation, or fact-finding. We are herein dealing with fact-finding as a method to resolve impasse. However, the selection of the neutral fact-finder is no different procedurally than that of selecting a neutral arbitrator. We find in BNA Government Employee Relation Reports, § 85:631, the following persuasive language:

"A contract may specify a single arbitrator or an arbitration board, consisting usually of equal numbers of representatives of each party, who, in turn, select the impartial members of the panel. If the panel or parties cannot agree on the arbitrator, they *may turn to the American Arbitration Association of Federal Mediation and Concilliation Service for a list of qualified persons from whom a final selection is made.* Often alternate names are struck until only one person is remaining."

Also, in Prentice-Hall's Public Personnel Administration-Management Relations, Vol. I, § 5732, we find the following language:

"The following procedure is usually used in securing the services of an arbitrator: either party may request the agency selected in the contract to provide a list of qualified persons; within a specified number of days the parties try to agree on an individual; *if they fail to make a mutual determination, the agency providing the list of arbitrators makes a selection for them by assigning an individual.*

"Many agencies use a roster of arbitrators that they mail to each of the parties. The parties have the right to cross off those names not satisfactory to them. If agreement is not reached the agency will assign an arbitrator."

We find nothing in the statutes nor the contract which authorizes AAA or any other service to furnish the third party neutral chairperson, however, it appears to be an accepted practice in writing negotiating procedures contract to set forth with specificity the manner of selecting the third neutral arbitrator or fact-finder in the event of impasse.

We are, therefore, of the persuasion that to carry out the intent of the parties and to make impasse procedures viable rather than nugatory, the intent of the parties at the time of contract specifically was that in the event the parties could not agree upon the third neutral fact-finder to act as chairperson, the parties, under the verbiage of the contract, had clear intent to use a list provided by AAA toward the selection of the neutral.

The parties to this lawsuit cannot even agree upon the manner of selection from an AAA list, if the neutral is to be selected from such a list. It is strongly urged, in an effort to avoid further impasse in this narrow area, that a revised list be obtained without delay, from the AAA, said list to contain the names of seven (7) persons to act as the third party neutral fact-finder. The selected fact-finders of each of the parties will alternate in striking from the submitted list the name of one of the persons recommended till but one name remains. The remaining name shall act as the third party neutral chairperson. Because the Board of Education is first named in the contract, the Board shall exercise the first right to strike a name from the submitted AAA list. After which, the ACT Representative will strike a name, and the parties will continue to alternate in striking names from the list till but one remains.

In the process of striking names and resultant selection of the third party neutral, the parties are to be bound by the rule enunciated in *Knox-Burchard Mercantile Co. v. Hartford F. Ins. Co.,* 129 Minn. 292, 152 N.W. 650:

If the selection is to be made by the arbitrators (fact-finders) it should be made by them alone in the exercise of their judgment and discretion, uncontrolled by the interested parties, and they should try to select an unprejudiced, honest, and competent person.

Application to Assume Original Jurisdiction Granted. Petition for Writ of Mandamus Issue in accordance with the Instructions contained in this opinion.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, LAVENDER, SIMMS and DOOLIN, JJ., concur.

IRWIN and BARNES, JJ., dissent.