FALCON PETROLEUM COMPANY, a Texas corporation; Martin Gruss, an individual; Carolyn Gruss and Irving Neuman, Trustees for the benefit of Evelyn Gruss Lipper; City Bank, N.A., a national banking association; and J.L. Danforth, Co–Executors of the Estate of Robert S. Danforth; Evelyn Gruss Lipper, an individual; Mike Moore, Trustee of the John W. Moore Trust; Charles Pride, an individual; Clyce Ragsdale, an individual; Robert Schuster, Trustee; Ross Traphagen, Jr., an individual; Whiteman Industries, a corporation; Jet Mason, Trustee of the E.R. Trust of 1986; Tom Hill, an individual; Lemon Tree Trust, a Texas general partnership; Ray Pfaff, an individual; and Cynthia Lynn McKinney, an individual, Appellees,

v.

PANHANDLE EASTERN PIPE LINE COMPANY, a Delaware corporation, Appellant.

No. 73269.

Court of Appeals of Oklahoma, Division No. 3.

Feb. 13, 1990.

---

1. The Chief's expressly delegated duties are set forth in 11 O.S.1981 § 21–111.

J. Kevin Hayes, and William G. Bernhardt, Tulsa, and William R. Burkett, and Elizabeth A. Scott, Oklahoma City, and James T. Jeffus, Houston, Tex., for appellant.

Robert D. McCutcheon, and Mitchell D. Blackburn, Oklahoma City, for appellees.

## MEMORANDUM OPINION

HANSEN, Presiding Judge:

Appellant Panhandle appeals from an order of the trial court granting arbitration in part and denying arbitration in part on a gas purchase agreement between the parties.

On June 20, 1978, Panhandle (Buyer) negotiated a "take or pay" gas purchase agreement with Falcon (Seller) wherein Seller agreed to sell and Buyer agreed to purchase all of Seller's interest in and to the natural gas under certain wells producing from the Chester formation in Texas and Beaver Counties, Oklahoma. The agreement was to remain in full force and effect for a term of five years "from the date of first delivery." Both sides agree the contract by its terms expired October 31, 1983. However, Buyer continued to purchase gas through 1987. In December, 1988, Falcon (and other Plaintiffs) filed their petition seeking recovery of alleged "take-or-pay" damages for contract years 1983 through 1987. In February, 1989, Panhandle filed a Motion to Compel Arbitration and to Stay pursuant to the following arbitration provision of the gas purchase agreement:

In the event a dispute should arise between the parties hereto which cannot be resolved by reasonable negotiation, either party may demand the submission of the dispute to arbitration. Such demand shall be in writing.... Arbitration of the dispute shall thereupon proceed under the then existing provisions of the Uniform Arbitration Act promulgated by the Conference of Commissioners on Uniform State Laws, as the same may be amended from time to time, whether or not said Uniform Arbitration Act shall be in force in the state or states in which the unit acreage is located. A decision of the majority of the panel of arbitrators shall be final and binding upon the parties.

On March 14, 1989, a hearing was held on Panhandle's motion. Falcon had alleged gas deficiencies for years 1983 through 1987, with most of the contract years at issue occurring after the ostensible expiration date of the contract (October, 1983). Panhandle maintained, however, that the gas purchase agreement compelled arbitration for the years in question, but also that Falcon had no cause of action after October, 1983, because the contract had expired by its own terms. Falcon responded (and asserts on appeal) that should the trial court find the terms and conditions of the gas purchase agreement governed the parties' relationship during 1984 through 1987, arbitration of all disputes would be appropriate. Further, Falcon did not oppose Panhandle's right to demand arbitration of disputes arising during the time the contract remained in full force and effect. The trial court found the arbitration provisions of the agreement were applicable in some areas and not in others. The court further found the burden of proving that arbitration is required is on the Defendant (Panhandle), and that Panhandle had not presented evidence to support a mandatory arbitration agreement between the parties after October 31, 1983. The trial court then ordered (1) arbitration for that period of time prior to October 31, 1983, and (2) the litigation, rather than arbitration, of all claims after October 31, 1983 to proceed.

## THE ISSUES ON APPEAL

Panhandle asserts two propositions in its Petition in Error:

1. The court erred in *refusing to compel arbitration* subsequent to October 31, 1983.

2. The court erred in *refusing to stay the action* subsequent to October 31, 1983.

Our review of these two contentions of error reveals Panhandle is merely arguing both sides of the same coin, and accordingly, we will treat both propositions as one.

The threshold issue before this Court is whether a dispute as to the termination of a contract should be submitted to arbitration pursuant to an arbitration clause in the expired contract. No previous Oklahoma cases have addressed this question. The issue herein presented is apparently one of first impression, for neither side has cited any authority in its briefs from any jurisdiction pointing toward an immediate legal solution to the issue.

We do not argue with Panhandle's general proposition that Oklahoma courts have consistently favored and enforced contract clauses requiring the submission of disputes to arbitration. *Deal v. Thompson*, 51 Okl. 256, 151 P. 856 (1915). The purpose of arbitration is to preclude court intervention into the merits of disputes when arbitration has been provided for contractually. *Voss v. Oklahoma City*, 618 P.2d 925 (Okla.1980). The Oklahoma Supreme Court has even, on occasion, issued a writ of mandamus to compel a teachers' union and a school board to arbitrate in the public interest. *Association of Classroom Teachers v. Independent S.D. #89*, 540 P.2d 1171 (Okla.1975), and the courts have generally favored arbitration in labor disputes between municipalities and their police and firefighters unions. *Midwest City v. Harris*, 561 P.2d 1357 (Okla.1977).

Further, we find Panhandle's references to federal law on point with the broad axiom that the federal courts generally favor arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Arbitration promotes industrial stabilization. *United Steelworker v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

We note for the record that most of the cases cited by both parties are employee/employer disputes and generally pertain to a written collective-bargaining agreement. We can find no references to gas purchase agreements containing arbitration clauses, and therefore, we apply the relevant law most carefully.

In *Consolidated Broadcasting v. Am. Arbitration*, 115 Ill.App.3d 577, 71 Ill.Dec. 373, 450 N.E.2d 1252 (1983), the alleged grievances occurred between 1969 and 1976. The effective dates of the contract were 1968 to 1977, and although the action was brought after the expiration date of the contract, the lower court ruled arbitration was required because the alleged claims had occurred while the contract was still in effect. The appellate court affirmed, and we do not take issue with the logic of this holding. *Geller v. Temple B'Nai Abraham*, 11 Mass.App. 917, 415 N.E.2d 246 (1981) stands for the broad proposition that the "expiration of employment agreement and employee's letters of resignation did not, as a matter of law, preclude arbitration of the issue respecting employer's alleged breach of contract," but we are given no facts to determine expiration dates, claims or dates of alleged breach. In *McCrary Engineering Corp. v. Town of Upland*, 472 N.E.2d 1305 (Ind. App.1985), the threshold question was whether there ever was an agreement to arbitrate in the first place, and the issue in *Denhardt v. Trailways*, 767 F.2d 687 (10th Cir.1985) was simply a procedural dispute as to compliance within a certain time period to begin arbitration. And finally, in an employment termination case concerning a nurse in Boston, the court held that no services had been rendered by either party; and therefore, there was no contract and thus no duty to arbitrate. *Mendez v.*

*Trustees of Boston Univ.*, 362 Mass. 353, 285 N.E.2d 446 (1972). These cases quote accepted law as applied to their respective fact situations, but are of little help in resolving the present conflict.

Falcon cites two cases with fact situations presenting issues more similar to the case at bar. In *Procter & Gamble Ind. Union v. Procter & Gamble Mfg. Co.*, 312 F.2d 181 (2nd Cir.1962), the parties had a collective bargaining agreement for the period April 30, 1959 to April 30, 1960. The agreement expired during contract negotiations, but a new agreement was finally reached and became effective on June 23, 1960. The old agreement contained an arbitration clause which would have covered grievances between April, 1959 and April, 1960. But a grievance was submitted on May 21, 1960 for a disciplinary measure taken by employer on May 18, 1960. The question before the federal court was whether the employer was bound to arbitrate these grievances by the previous agreement or by any duty created by law. The appellate court held the employer was under no obligation to arbitrate:

> The duty to arbitrate is wholly contractual and the courts have the obligation to determine whether there is a contract imposing such a duty....
>
> Our task is, then, to determine whether at the time these grievances arose there was any agreement to arbitrate grievances.
>
> We hold that the district court was correct in finding that the collective bargaining agreement which contained the applicable arbitration agreement expired by its own terms on April 30, 1960.... It had, then, already expired before the occurence of the activities out of which these grievances developed.
>
> We reject appellee's argument that the agreement continued in effect by reason of the action of the parties.

*Procter & Gamble*, 312 F.2d at 184.

*Korody Marine Corporation v. Minerals & Chemicals Philipp Corp.*, 300 F.2d 124 (2nd Cir.1962) dealt with the issue of both parties continuing to transact business after the formal expiration of their contract and whether such conduct by the parties created a new obligation by operation of law. The appellate court held:

> We see no reason not to accept the trial judge's factual conclusion that the parties did not agree to renew the contract which expired December 31, 1960. There is no claim that any of the transactions in question took place before the expiration of the contract. The fact that the parties continued to deal under some sort of informal arrangement does not mean the terms of the expired formal contract continued to apply.

Using the courts' rationale and holdings in *Procter & Gamble* and *Korody*, we hold that in the case at bar both parties are obligated to arbitrate any and all disputes which arose before October 31, 1983, that the parties are not obligated to arbitrate any disputes arising after October 31, 1983, the expiration date in the contract, and further, that the gas purchase agreement did not continue in effect after October 31, 1983, by reasons of the action of the parties.

And finally, as an historical comment, we note the Oklahoma version of the Uniform Arbitration Act was adopted by our State Legislature on October 1, 1978. The contract in question was signed June 20, 1978, and therefore, the applicable arbitration law, by agreement of the parties, is "the Uniform Arbitration Act promulgated by the Conference of Commissioners on Uniform State Law...." Section 2 of this Act is almost identical with § 803 of the Oklahoma version of the Uniform Act, 15 O.S. Supp.1978 § 801, et seq., and provides:

> On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration

if found for the moving party; otherwise, the application shall be denied. (Emphasis supplied.)

Upon review we find the trial court proceeded "summarily" to the determination of the issue of arbitration. Trial briefs were submitted by both parties and a full hearing was held on March 14, 1989. The findings and the resulting order of the trial judge on April 24, 1989, reflects a careful and deliberate decision. For reasons previously stated, we find the trial court did not err in refusing to compel arbitration after October 31, 1983, and, consequently, the trial court did not err by refusing to stay Falcon's cause of action arising after October 31, 1983.

We AFFIRM the trial court.

BAILEY and MacGUIGAN, JJ., concur.