David W. WAY, Director of State Finance, Appellant,

v.

GRAND LAKE ASSOCIATION, INC., an Oklahoma Nonprofit Corporation; Oklahoma Tourism and Recreation Commission; Oklahoma Tourism and Recreation Department; Abe L. Hesser, Executive Director of Oklahoma Tourism and Recreation Department, Appellees.

David W. WAY, Director of State Finance, Appellant,

v.

GREAT PLAINS COUNTRY, INC., an Oklahoma Nonprofit Corporation, Frontier Country, Inc., an Oklahoma Nonprofit Corporation, Lake Eufaula Association, Inc., an Oklahoma Nonprofit Corporation, Kaw Lake Association, Inc., an Oklahoma Nonprofit Corporation, Texoma Lake Association, Inc., an Oklahoma Nonprofit Corporation, Fort Gibson Lake Association, Inc., an Oklahoma Nonprofit Corporation, Tenkiller Lake Association, Inc., an Oklahoma Nonprofit Corporation, Fun Country, Inc., an Oklahoma Nonprofit Corporation, Green Country, Inc., an Oklahoma Nonprofit Corporation, Keystone Lake Association, Inc., an Oklahoma Nonprofit Corporation, Red Carpet Country, Inc., an Oklahoma Nonprofit Corporation, Appellees.

Nos. 56406, 56731.

Supreme Court of Oklahoma.

June 9, 1981.

Rehearing Denied Nov. 16, 1981.

Jan Eric Cartwright, Atty. Gen., Manville T. Buford, Asst. Atty. Gen., Chief, Civ. Div., John F. Percival, Asst. Atty. Gen., Oklahoma City, for appellant.

James P. Laurence, Laurence & Harter, P. C., Oklahoma City, for appellee, Grand Lake Association, Inc.

E. Stephen Briggs, Counsel, Oklahoma Dept. of Tourism and Recreation, Oklahoma City, for appellees, Oklahoma Tourism and Recreation Commission, Oklahoma Tourism and Recreation Department, Abe L. Hesser, Executive Director.

LAVENDER, Justice:

This action (56,406) was instituted by Grand Lake Association, Inc., an Oklahoma nonprofit corporation, on a petition for an alternative writ of mandamus to compel defendants below to approve certain claims submitted by plaintiff for payment under the provisions of Laws 1979, c. 289, § 16, as amended, Laws 1980, c. 268, § 4, and 1980 Laws, c. 354, and issue warrants for payment of said claims. On January 8, 1981, the district court issued an alternative writ of mandamus, and upon trial, entered its peremptory writ of mandamus ordering and directing the Oklahoma Tourism and Recreation Commission, Oklahoma Tourism and Recreation Department, Abe L. Hesser, and David B. Way, Director of State Finance, and each and all of them to immediately upon receipt of the writ, approve the claims properly submitted by the plaintiff for payment under the provisions of said statutes, from the appropriations provided in 1980 Session Laws, c. 354, § 1 as required by law, and issue the warrants necessary for payment of said claims.

The Oklahoma Legislature enacted the "Oklahoma Tourism and Recreation Act"[1] creating the Oklahoma Tourism and Recreation Commission (Commission) and the Oklahoma Tourism and Recreation Department (Department). A summary of the act insofar as it pertains to the issues hereinafter presented is as follows:

The declared purpose of the Commission and the Department is to promote the development and use of the state's lodges, parks, and recreational areas; promote tourism by publicity and dissemination of information; assist in promotion of events sponsored by municipalities, associations, and organizations commemorating special events of local or historical interest; and function in an advisory capacity to the Governor, state legislature, state agencies, municipalities, and to private organizations on matters pertaining to tourism and recreation.[2]

The Commission is the policy determining agency for the Department and determines the broad plans and programs for the accomplishment of duties and responsibilities vested by law in the Commission.[3]

Certain divisions are created within the Department, among which is the Division of Tourism Promotion[4] which is directed (among other things) to assist public and private agencies in the preparation of informational and publicity programs designed to attract tourists to the state; assist in the planning and execution of programs of information and publicity about the tourism and recreational advantages of the state; and support and assist municipalities and public and private associations in soliciting

1. Laws 1972, c. 152, § 1 et seq.

2. Laws 1972, c. 152, § 3.

3. Laws 1972, c. 152, § 6.

4. Laws 1972, c. 152, § 6.

conferences, meetings, and conventions to be held within the state.[5]

By legislative amendment [6] it is declared to be the intent of the legislature to encourage the promotion of tourism by multicounty organizations in cooperation with the Tourism and Recreation Department's statewide program.[7]

The Department, with the approval of the Commission, is directed to develop rules and regulations to administer the match of one-half of the allowable expenditures of multicounty organizations in accordance with the following legislative guidelines: [8]

Matching funds for one-half of the allowable expenditures shall be based upon actual expenditures by the multicounty organization less any discount, refund, or rebate to the multicounty organization.

Each multicounty organization shall prepare and submit appropriate plans, including a budget work program, for the ensuing fiscal year to the Tourism and Recreation Commission to be allowable. The Tourism and Recreation Commission's approval of a multicounty organization budget work program constitutes a firm commitment of the multicounty organization's appropriated funds, subject to any fiscal year limitation, except that the Commission may reallocate unobligated funds as provided by law.

Multicounty organizations shall use a State of Oklahoma notarized claim form with all applicable statements and affidavits to request matching funds.

Each multicounty organization shall be required to submit to an independent and certified audit of the multicounty organization performed by a public accountant or certified public accountant registered with the Oklahoma Board of Public Accountancy to the standards established by the Board of Public Accountancy for audits and shall include the specific requirements set forth in the Act. The audit shall encompass all funds available to the multicounty organization and shall include a statement showing the source of the funds and the fund raising method and the disbursement of all allowable and discretionary expenditures. Failure to submit an audit report shall be cause for withholding of matching funds. Audit reports showing matching of over one-half of the allowable expenditures, matching for unallowable expenditures, or non-compliance with the Act shall be cause for withholding of matching funds until such time as restitution is made to the Department.

"Administrative expenditures" are defined as expenditures for the administration of fundraising and tourism promotion and includes salaries and payroll taxes, personal services contracts, travel expenses, rent of facilities, office supplies, telephone, and audit costs. Such expenditures shall not exceed 40% of the lesser of either the total amount allocated to the organization from legislative appropriations or the total of the matched expenditures.

"Allowable expenditures" are defined as those expenditures by multicounty organizations submitted to the Department of Tourism and Recreation in accordance with the Act and the rules and regulations promulgated by the Commission.

H.B. 1647, 1980 Session Laws, c. 354, § 1 purports to fund the program by a "line item" appropriation to tourism for 15 specifically named organizations, including $40,000 to plaintiff below, Grand Lake Association, Inc.

Plaintiff submitted claims totaling $3,555.11 for match funds which were denied by reason of the opinion of the Attorney General of the State of Oklahoma No. 80–165–B dated 8–19–80 that funding of

5. Laws 1972, c. 152, § 13, Laws 1973, c. 222, § 7.

6. Laws 1979, c. 289, § 16, Laws 1980, c. 268, § 4.

7. The legislative meaning of the term "multicounty organizations" is not defined in the Oklahoma Tourism and Recreation Act other than what is implied by the ordinary meaning of the term itself.

8. Laws 1979, c. 289, § 16, Laws 1980, c. 268, § 4.

multicounty organizations as described in section 4 of Enrolled Senate Bill 590, Thirty-seventh Legislature, Second Regular Session, is constitutionally invalid.

Plaintiff filed suit seeking to compel payment through a writ of mandamus. The court below upon trial entered a peremptory writ of mandamus directing defendants to pay the claims properly submitted by plaintiff from the appropriations provided in 1980 Session Laws, c. 354, § 1 as required by law and issue the warrants necessary for payment of said claims. Defendant, David W. Way, Director of Finance, appeals.

The first issue to be considered is whether mandamus is the proper remedy, it being contended by defendant that there is an adequate remedy at law and that the plaintiff may not enforce an alleged contractual right by writ of mandamus.

The Oklahoma Constitution Article 7, section 2 vests the district courts with jurisdiction to issue writs of mandamus.[9]

■ We hold that the allowance of payment of the claims under the circumstances of this case is a ministerial act enjoined upon defendant by statute. *State ex rel. St. Louis-San Francisco Ry. Co. v. Boyett*, 183 Okl. 49, 80 P.2d 201 (1938).

A writ of mandamus may not be issued where there is a plain and adequate remedy in the ordinary course of the law.[10] Defendant contends that our holding in *State Board of Public Affairs v. Principal Funding Corp.*, Okl., 542 P.2d 503 (1975) precludes plaintiff's suit for relief through a writ of mandamus. While that case did expressly overrule a previous case between the same parties [11] by holding where a person or entity enters into a valid contract with the proper state officials and a valid appropriation has been made therefor, the state has consented to be sued and has waived its governmental immunity to the extent of its contractual obligation and such contractual obligation may be enforced against the state in an ordinary action at law, we do not construe the holding to thereby absolutely preclude a remedy through mandamus in all cases. Mandamus may be a viable remedy where there is no "plain and adequate remedy in the ordinary course of the law."

In this case the claim sought to be enforced is one created by legislation. As plaintiff points out, under the provisions of the appropriations bill, the funds become available for reallocation to other organizations if not used by February 1, 1981. In addition, if the funds are not used or obligated by June 1, 1981, they revert to the Division of Tourism Promotion of the Tourism and Recreation Division and finally, if the funds are not expended or obligated by June 30, 1981, they revert to the general fund of the State of Oklahoma.

■ An ordinary lawsuit in this instance followed by an appeal to this court would by the mere attrition of time thwart plaintiff's right to recover and use the match funds and thereby deny to the public the benefits intended in the act. The question of whether a remedy is adequate is one of fact to be determined by the court as a matter of discretion in the light of the facts of the particular case. *Association of Class. Teach. v. Independent S. D. # 89*, Okl., 540 P.2d 1171 (1975).

■ Mandamus ordinarily will not lie to enforce contractual rights, but where a contractual obligation is also imposed by law it may be enforced by Mandamus. *Association of Class. Teach., supra.*

We therefore hold mandamus to be an appropriate remedy under the facts and circumstances of this case. *Association of*

---

9. By statute, 12 O.S.1971 § 1451, a district court or any judge thereof is authorized to issue writs of mandamus to any inferior tribunal, corporation, board or person, to compel the performance of any act which the law specifically joins as a duty, resulting from an office, trust or station. Though it may require an inferior tribunal to exercise its judgment or proceed to the discharge of any of its functions, it cannot control judicial discretion.

10. 12 O.S.1971, § 1452.

11. *State ex rel. State Board of Public Affairs v. Principal Funding Corp.*, Okl., 519 P.2d 503 (1974).

*Class Teach. v. Independent S. D. # 89, supra.*

Defendant contends that the "line item" appropriation to Tourism in H.B. 1647, 1980 Session Laws, c. 354, § 1 is constitutionally defective in that it violates Art. 10, §§ 14 and 15 of the Oklahoma Constitution.[12]

We will therefore now consider whether the appropriation enactment is for a "public purpose" within the meaning of Art. 10, § 14 and whether the legislative appropriation constitutes a gift or appropriation of tax moneys to a private entity prohibited by Art. 10, § 15 of the Oklahoma Constitution.

Defendant in his brief as in the Attorney General's opinion which gave rise to this suit relies upon the cases of *Vette v. Childers*, 102 Okl. 140, 228 P. 145 (1924) and *Veterans of Foreign Wars v. Childers*, 197 Okl. 331, 171 P.2d 618 (1946).

Both *Veterans* and *Vette* are clearly factually distinguishable from the case at bar. In *Vette* there was an appropriation to a revolving fund under the control of the State Board of Agriculture which was authorized to invest said funds in mortgage bonds on warehouses for the storing, handling, or marketing of agricultural products owned by farmers' co-operative associations owned, operated, and controlled by associations of individuals. The associations of individuals to whom the fund was to be loaned were the ones directly benefitted by the act, and with only a prospective and indirect benefit to the public. *Vette* held that under such circumstances the act was not for a "public purpose" within the meaning of Art. 10, § 14 of the Constitution.

In *Veterans*, there was a legislative appropriation directed to the Veterans of Foreign Wars, a private agency, for assistance to war veterans and their families in obtaining benefits of federal and state legislation enacted in their behalf, free of any control or management of or by any officer or agency of the state. Similarly, it was held such appropriations were not for a "public purpose" within the meaning of Art. 10, § 14 of the Constitution.

On the other hand, under the legislation here under consideration, detailed conditions and governmental safeguards and controls are legislatively mandated as conditions for the participation by the defendant in the appropriation.

Our next consideration is whether the acts are for public purposes within the meaning of Art. 10, § 14 of the Constitution.

In *Board of Com'rs of Marshall County v. Shaw*, 199 Okl. 66, 182 P.2d 507 p. 515 (1947), we said:

"[T]he term 'public purposes' as used in section 14, Art. 10 is not to be construed in a narrow and restricted sense. *Pawnee County Excise Board v. Kurn* [187 Okl. 110, 101 P.2d 614], supra. In 51 Am.Jur. p. 378, section 326, it is stated that the term 'public purpose' as used in constitutional provisions that taxes shall be levied for public purposes only, is synonymous with 'governmental purposes,' and means a purpose affecting the inhabitants of the state or taxing district as a community, and not merely as individuals. Therein the test as to whether the purpose of taxation is public is stated as follows:

12. Okla.Const. Art. 10, § 14:
 Taxes shall be levied and collected by general laws, and for public purposes only, except that taxes may be levied when necessary to carry into effect Section thirty-one of the Bill of Rights. Except as required by the Enabling Act, the State shall not assume the debt of any county, municipal corporation, or political subdivision of the State, unless such debt shall have been contracted to defend itself in time of war, to repel invasion, or to suppress insurrection.

Okla.Const. Art. 10, § 15:
 The credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State; nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation.

" 'According to some authority, the true test of what is a public use for purposes of taxation is that which requires that the work shall be essentially public and for the general good of all the inhabitants of the taxing body. This does not mean, however, that a tax is not for a public purpose unless the benefits from the funds to be raised are to be spread equally over the whole community or a large portion thereof. A use may be public although it is of benefit primarily to the inhabitants of a small and restricted locality.' " [13]

In *Helm v. Childers*, 181 Okl. 535, 75 P.2d 398, 399 (1938) [14] the court held:

"The meaning of 'public purposes' for which governmental exaction of money may be had is not within a narrow and restricted sense. At any rate the courts cannot interfere to arrest legislative action where the line of distinction between that allowable and that which is not is faint and shadowy. In such instances the decision of the legislature is accepted as final. (Citations omitted.) It is conceivable that a public benefit may be derived as a result of the legislation."

In *Helm*, plaintiff sought (as here) a writ of mandamus to require respondent to issue to him a salary check as authorized by an act of the legislature which created the post of publicity director of the State Travel and Tourist Bureau and authorized the Highway Commission to fix the salary and make the appointment. · Respondent contended the act was not for a public purpose within the meaning of § 14, Art. 10, Oklahoma Constitution. The Supreme Court of Oklahoma issued a writ of mandamus directing the respondent to issue the salary check.

Obviously, the statutes in question fall within the generally accepted constitutional definition of a "public purpose."

However, *Vette v. Childers, supra*, followed in *Veterans of Foreign Wars v. Childers, supra*, adds another element to the constitutional definition of "public purpose" in Art. 10, § 14, to wit, that the purpose must be performed by the state in the exercise of its governmental functions.

Defendant urges that under the acts in question the plaintiff is authorized to perform governmental functions. Plaintiff contends the enactments in question are in the nature of a unilateral contract between the state and private agencies such as the plaintiff. In *Childers v. West*, 195 Okl. 220, 156 P.2d 809 (1945), a statute authorizing and directing West Publishing Company to compile, codify, and annotate the "Oklahoma Statutes, 1941" and authorizing the State Board of Affairs to enter into a contract with that company to purchase a certain number of volumes, subject to the approval of the statutes by the Justices of the Supreme Court was sustained as against a claim that the statute was in violation of Art. 5, §§ 51 and 59 of the State Constitution.

Again in *Children's Home and Welfare Ass'n v. Childers*, 197 Okl. 243, 171 P.2d 613 (1946) a contract between the State Board of Affairs and a non-governmental children's home for the care of orphans as authorized by statute was upheld against the contention that it violated Art. 10, § 15, the consideration for the contract being the

---

**13.** A later statement by the writers of Am.Jur. uses the following language (71 Am.Jur.2d State and Local Taxation, § 44): "The term 'public purpose' as used in a constitutional provision that taxes shall be levied for public purposes only, is synonymous with 'governmental purpose.' It means a purpose affecting the inhabitants of the state or taxing district as a community, and not merely as individuals. This does not mean, however, that a tax is not for a public purpose unless the benefits from the funds to be raised are to be spread equally over the whole community or a large portion

thereof. A use may be public although it is of benefit primarily to the inhabitants of a small and restricted locality. Moreover, it is said that any direct public benefit, no matter how slight, as distinguished from those public benefits or interests incidentally arising from private enterprise, will sustain a tax."

**14.** Quoted with approval in *Wallace v. Childers*, 198 Okl. 604, 180 P.2d 1005 (1947); *Board of Com'rs of Marshall County v. Shaw*, 199 Okl. 66, 182 P.2d 507 (1947).

service to the State of Oklahoma in caring for orphans.[15]

In *Dixon v. Shaw*, 122 Okl. 211, 253 P. 500 (1927), this court stated:

"Governmental ends under our political system, and the method and expenditures incidental to the proper reaching thereof, are placed in the hands of the sovereign legislature. It represents the will of the people in a degree no less conclusive than a constitutional convention, in all matters not either expressly or by clear implication prohibited by the basic law of the State. No one can call such body, or the members thereof, to account for its or their expenditure of public funds, or other matters brought within its control, save and except the people in their sovereign capacity, unless the power of the courts can be invoked to restrain and prevent the completion of a purpose expressed by such body in violation of the basic law of the State.

What we have just said brings us to the first proposition announced by the plaintiffs, to the effect that the Legislature is sovereign, and has no limitations as to expenditures, either for its own members, or for other departments of state government, save and except where the Constitution of the state or nation has seen fit to place an inhibition. This is so well recognized that it has become all but axiomatic. This court in many cases has clearly enunciated this rule, following both the logic and the reason of all courts of this nation, both state and federal. * *

The sovereign speaks through its legislative body, and the legislative body determines the policy of the sovereign which has no limitation as to expenditures, save and except those which are expressly placed on its exercise by the Constitution of the State. *Graham v. Childers, State Auditor*, 114 Okl. 38, 241 P. 178. See also *State ex rel. Grand Jury, etc. v. Pate*, Okl., 572 P.2d 226 (1977); *Wiseman v. Boren*, Okl., 545 P.2d 753

(1976); *Tate v. Logan*, Okl., 362 P.2d 670 (1961)."

Again, more recently, this court has held:

"If there is any doubt as to the validity of an act of the Legislature, the doubt must be resolved in favor of the constitutionality of the act of the Legislature." *Dobbs v. Board of County Commissioners of Oklahoma County et al.*, 208 Okl. 514, 257 P.2d 802, 806 (1953).

Quoting from an earlier case, the court continued in *Dobbs* and stated:

"The people of the State have, through its Constitution makers, the right to limit the power of the State Legislature, and any limitation on the power of the legislature should arise only upon specific declaration and should be strictly construed against implied limitations and any doubt arising should be resolved in favor of the power of the Legislature."

The court in *Herndon, Judge v. Anderson*, 165 Okl. 104, 25 P.2d 326 (1933) adopted the language of the Supreme Court of Missouri when it stated:

"When the validity of a statute is drawn in question the Court approaches the subject as one involving the gravest responsibility, and to be considered with the greatest caution. The general assembly is presumed to have been as careful to observe the requirements of the Constitution in enacting the statute as a Court in applying it. Every presumption is to be indulged in favor of the validity of the act and that presumption is to continue until its invalidity is made to appear beyond a doubt. It is the duty of the Courts to uphold legislative acts unless it plainly and clearly violates the Constitution, and, if its language is susceptible to a meaning that will remove the objections to its validity, such interpretation should be adopted. 'A legislative intent to violate the Constitution is never to be assumed if the language of the statute can be satisfied by a contrary construction.' Endlich on the Interpretation of Statutes, Section 179. It is our duty to uphold the act unless it plainly and clear-

---

**15.** An accord, *Murrow Indian Orphans Home v. Childers*, 197 Okl. 249, 171 P.2d 600 (1946).

ly violates the fundamental law of the state, and if its language is susceptible to a meaning that will remove the objections to its validity, such interpretation should be adopted." [Citations omitted.] *Ex Parte Loving*, 178 Mo. 194, 77 S.W. 508.

 Under the facts and circumstances of this case, we hold that the statutes in question in light of the legislative purposes and objectives therein expressed are "public purposes" within the meaning of Art. 10, § 14 of the Oklahoma Constitution, and by reason of the detailed requirements and qualifications together with the governmental controls and safeguards which are an integral part of the statutory plan under which the plaintiff is enabled to receive legislative appropriations, the appropriation statutes are in the nature of a unilateral contract between an agency of state government and Grand Lake Association, Inc. Plaintiffs herein are not, therefore, in violation of Art. 10, § 15.

In *Carter, State Auditor v. Miley*, 187 Okl. 530, 103 P.2d 933 (1940) we upheld the constitutionality of a contract between the state and a private attorney for the payment of attorney fees incurred in testing the legality of a state statute. Under the statutes now before us the terms and conditions under which the multicounty agencies are entitled to participate in appropriations are in the nature of and the equivalent of an offer on the part of the state. Compliance with the statute on the part of the multicounty organization is the equivalent of an acceptance of such an offer.

The controls and restrictions of the acts are as protective and stringent and as detailed as might be expected from a specific legislative enactment particularizing the terms of a contract to perform services to the state.

Defendant's final contention is that H.B. 1647 appropriates funds for "fewer than the whole of the class defined by 74 O.S.Supp. 1979, § 1830" and is therefore an unconstitutional special law under Art. 5, § 59 of the Oklahoma Constitution.

As we understand defendant's argument, § 1830 provides for a program relating to "multicounty organizations" Senate Bill 120, Laws 1979, c. 289, § 1 and H.B. 1647 provides funds for 15 specific "multicounty organizations," and since there may be more than 15 multicounty organizations, the omission of the unfunded organizations makes the acts class legislation.

 However, the record is devoid of any facts or evidence on the basis of which this court can determine whether there are or are not omitted organizations.

Matters not in the record may not be reviewed on appeal. *Dalton v. City of Tulsa*, Okl., 560 P.2d 955 (1977).

Because of the consolidation of causes 56,406 and 56,731, what has been said in this opinion is applicable to the resolution of the issues in both cases.

JUDGMENTS IN BOTH CASES AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and WILLIAMS, HARGRAVE and OPALA, JJ., concur.

HODGES, SIMMS and DOOLIN, JJ., dissent.