Dear Representative Dank:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Under what conditions may the State of Oklahoma authorize income tax credits? Must a taxpayer perform an economic activity to claim an income tax credit? Do income tax credits violate Sections 14 and 15 of Article X of the Oklahoma Constitution because the credit constitutes a gift?
 2. If the State of Oklahoma authorizes a tax credit and also allows the tax credit to be transferred from the taxpayer originally entitled to the tax credit to another taxpayer, does the transfer violate Sections 14 and 15 of Article X of the Oklahoma Constitution because the taxpayer, to which the credit is transferable, may have the benefit of reducing a tax liability without any corresponding economic obligation?
 3. Do the provisions of the Small Business Capital Formation Incentive Act or the provisions of the Rural Venture Capital Formation Incentive Act violate Sections 14 and 15 of Article X of the Oklahoma Constitution because the credit resulting from the investment activity constitutes a gift to a taxpayer entity making the investment upon which the credits are based?
 STANDARD OF REVIEW
Statutes are presumed constitutional. Reherman v. Okla. Water Res. Bd.,679 P.2d 1296, 1300 (Okla. 1984). "Whenever possible, statutes should be construed so as to uphold their constitutionality." Id. If a statute's "language is susceptible to a meaning that will remove the objections to its validity, such interpretation should be adopted." Way v. Grand LakeAss'n, 635 P.2d 1010, 1017, (Okla. 1981) (quoting Herndon v. Anderson,25 P.2d 326, 328 (Okla. 1933)). *Page 2 
The question to be answered in evaluating a statute's constitutionality is not whether the Legislature is permitted to do such an act but whether the Legislature is prohibited from doing such an act. Draper v. State,621 P.2d 1142, 1146 (Okla. 1980).
 I. THE OKLAHOMA SUPREME COURT HAS UPHELD THE CONSTITUTIONALITY OF OKLAHOMA INCOME TAX CREDITS
"The legislature declares the fiscal policy of Oklahoma, and has the responsibility to do so." Fent v. State ex rel. Okla. Tax Comm'n,99 P.3d 241, 247 (Okla. 2004).[1] The State of Oklahoma has fifty-five income tax credits.[2] Income tax credits that annually reduce Oklahoma state revenue by hundreds of millions of dollars have been enacted over the years.[3] These credits can be broadly classified in two categories: non-economic development credits and economic development credits.
 A. Non-Economic Development Tax Credits
Non-economic development income tax credits have been upheld by the Oklahoma Supreme Court. Fent upheld the validity of the Oklahoma earned income tax credit (68 O.S. 2001, § 2357.43[68-2357.43]) as to various constitutional provisions, including Sections 14 and 15 of Article X of the Oklahoma Constitution. In analyzing the issue, Fent stated:
 The issue before us concerns not the levying of a tax, but the adoption by the legislature of a tax credit. We have held previously that deductions to be allowed in computing net income depend entirely on the legislative will and must be clearly expressed. Deductions from gross income are a matter of legislative grace, and whether they are allowable [to the taxpayer] depends upon the statute. The same rationale applies to tax credits enacted by the legislature. *Page 3 
Id. 99 P.3d at 244 (citations omitted). Furthermore Fent said:
 The State may classify persons and the origin of their incomes, and may apportion deductions or exemptions, provided the classifications and apportionment are reasonable and related to the object of taxation. All that is required is that there be reasonable classification and reasonable opportunity for uniform or equal incidence upon the classes created. The determination by this Court is whether our legislature has "classified reasonably and has set up a system designed to operate with reasonable uniformity and equality on the given classes."
Id. at 245 (citations omitted).
Fent also looked at the constitutional provisions of Sections 14 and 15
of Article X of the Oklahoma Constitution. Sections 14 and 15(A) are generally construed in tandem. Section 14 is a restriction on the expenditure of public funds. In pertinent part it provides, "taxes shall be levied and collected by general laws, and for public purposes only." OKLA. CONST. art. X § 14(A). Section 15 of Article X of the Oklahoma Constitution limits the ability of the State to give, pledge, loan or donate to individuals or entities:
 A. Except as provided by this section, the credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State, nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation.
Id. Fent found the Oklahoma earned income tax credit did "not constitute a gift by the state to individuals under Art. 10 § 15." Id. 99 P.3d at 248.
 B. Economic Development Tax Credits To be Constitutional, Economic Development Tax Credits Must:
 1. SERVE A PUBLIC PURPOSE,
 2. BE SUPPORTED BY ADEQUATE CONSIDERATION, AND
 3. HAVE ADEQUATE CONTROLS AND SAFE GUARDS. *Page 4 
"Encouragement and promotion of commerce and industry in the state is an authorized function of the State of Oklahoma." In re Okla. Dev. Fin.Auth., 89 P.3d 1075, 1081 (Okla. 2004). "An economic development plan, in whatever form it takes, will be upheld so long as it serves a public purpose and otherwise meets constitutional requirements." State ex rel.Brown v. City of Warr Acres, 946 P.2d 1140, 1144-45 (Okla. 1997). For an economic development income tax credit to be constitutional, three elements must be present:
 1. The credit must serve a public purpose,
 2. The credit must be supported by adequate consideration, and
 3. The credit must have adequate controls and safeguards.
 PUBLIC PURPOSE
"(T)he term `public purposes' as used in section 14, Art. 10 is not to be construed in a narrow and restricted sense." Way, 635 P.2d at 1015
(quoting Bd. of Comm'r v. Shaw, 182 P.2d 507, 515 (Okla. 1947)). Way
noted that the term "public purpose" as used in a constitutional context is "synonymous with `governmental purposes.'" Id. It "means a purpose affecting the inhabitants of the state or taxing district as a community, and not merely as individuals." Id. (emphasis added). See also, Burkhardtv. City of Enid, 771 P.2d 608, 610-11 (Okla. 1989). Further "[c]ourts are to give great deference to a legislative body's determination that a particular project serves a public purpose," and will reverse such determination "only upon a clear showing that it was manifestly arbitrary, capricious, or unreasonable." City of Warr Acres,946 P.2d at 1144.
 ADEQUATE CONSIDERATION
The second factor for determining whether a legislative appropriation constitutes a gift as prohibited by Section 15, Article X turns on the presence of adequate consideration. "A gift within the meaning of this section is a gratuitous transfer of the property of the state voluntarily and without consideration." Hawks v. Bland, 9 P.2d 720, 722, (Okla. 1932). The existence of consideration was the determining factor inChildrens Home Welfare Association v. Childers, 171 P.2d 613 (Okla. 1946):
 [W]e conclude that where the State receives property or service in return for the payment of its money, even though such payment by the State be voluntary in the sense that the contract whereunder the money was paid was voluntarily entered into, it is not to be treated as a gift.
Id. at 614. *Page 5 Way found that the consideration test had been met by the legislation's creation of a unilateral contract:
 [A]nd by reason of the detailed requirements and qualifications together with the governmental controls and safeguards which are an integral part of the statutory plan under which the [private company] is enabled to receive legislative appropriations, the appropriation statutes are in the nature of a unilateral contract between an agency of state government and [the private company]. [The private companies] herein are not, therefore, in violation of Art. 10, s 15.
Way, 635 P.2d at 1018.
Burkhardt also found that, "Consideration may be measured by benefit to one party or by forbearance, detriment, loss or responsibility assumed by the other party." Id. 771 P.2d at 611. The court found the presence of adequate consideration in the private university's agreement to remain operating and to accept strict restrictions on the expenditure of the funds received from the city in exchange for the campus property. "Although a municipality may be flexible in structuring its plans for economic development, it must obtain adequate consideration and accountability from a private actor in exchange for the expenditure of public funds." Id. at 614 (emphasis added).
 CONTROLS AND SAFEGUARDS Way emphasized the "detailed conditions and governmental safeguards and controls" present in the legislation at issue. Id. 635 P.2d at 1015. The factual scenario involved in Way was an appropriation of state funds to the Oklahoma Tourism and Recreation Department for the purpose of providing funding to public and private agencies to cooperate with the Department in the promotion of tourism in Oklahoma. Id. at 1012. Given the detailed expressions of the legislative purposes and the restrictions and safeguards on how the funds could be spent by the corporations in furtherance of those purposes, Way concluded that the appropriations were for public purposes. Id. at 1018.
In summary, for an economic development income tax credit to be constitutional three elements must be present:
 1. a public purpose,
 2. adequate consideration, and
 3. adequate controls and safeguards.
 C. Example of an Oklahoma Economic Development Tax Credit That Meets All Three Required Factors. *Page 6 
An example of an Oklahoma economic development income tax credit that appears to meet all three required factors is the credit for Oklahoma manufacturers of advanced small wind turbines. See 2010 Okla. Sess. Laws ch. 327, § 12 (amending 68 O.S.Supp. 2009, § 2357.32B[68-2357.32B]). A public purpose is present because using renewable energy to conserve our natural resources benefits all Oklahomans. Wind energy has a positive impact on the environment, and does not generate the pollutants caused by other energy generation sources.
Consideration is present because the credit is predicated on the actualmanufacture of "advanced small wind turbines." See id. (emphasis added).
In Section 2357.32B(C) adequate controls are present as, before claiming the credit, a company "shall agree in advance to allow their production and claims to be audited by the Oklahoma Tax Commission" and because no credit is available until the manufacturer has in fact manufactured advanced small wind turbines in Oklahoma.[4] Id.
 D. Example of an Oklahoma Economic Development Tax Credit That Does Not Meet All Three of the Required Factors.
An example of an Oklahoma economic development income tax credit that does not appear to have met the three factor test is the coast to coast airline service tax credit. 68 O.S.Supp. 2009, § 2357.28[68-2357.28].[5]
Under this statute, a tax credit was generated by making an eligible investment in an establishment that:
 3. a. is headquartered in this state or is ultimately controlled by an entity headquartered in this state, and
 b. has been certified by the Tax Commission as meeting the following minimum qualifications:
 (1) is included within the definition of "basic industry" as set forth in division (7) of subparagraph a of paragraph 1 of subsection A of Section 3603 of this title and has been preapproved by the Oklahoma Department of Commerce to receive incentive payments pursuant to the Oklahoma Quality Jobs Program Act. . . .
 (2) can demonstrate commitments from not fewer than twenty entities doing business in this state, with such entities having in the aggregate *Page 7 
not fewer than two thousand (2,000) employees in this state, to utilize the services of the establishment in providing nonstop air transportation from this state to either the west coast or the east coast of the continental United States, or both. Such commitments, at a minimum, may be in the form of letters of intent from authorized officers of such entities which demonstrate a best efforts intention to utilize such air transportation, and
 (3) has received, or its parent has received, in calendar year 2000, a capitalization commitment in the amount of Fifteen Million Dollars ($15,000,000.00) or more from a local governmental entity, including, but not limited to, proceeds from the issuance of revenue bonds, financial obligations or other evidences of indebtedness.
Id. (emphasis added).
The coast to coast airline service tax credit does not meet the three factor test because that tax credit provision lacks adequate consideration, and does not constitute a public purpose. As we learned from both the Way and Burkhardt cases, public purpose is synonymous with a "governmental purpose," and "means a purpose affecting the inhabitants of the state or taxing district as a community, and not merely as individuals." Way, 635 P.2d at 1015 (citation omitted); see Burkhardt, at771 P.2d at 611. Certainly, the establishment of nonstop airline service from Oklahoma to either the east or west coast would constitute a public purpose affecting the inhabitants of the State as a community. But, the coast to coast airline service tax credit does not require the establishment of such a service in order for the credit to be earned.
Rather, to obtain the credit all that is necessary is that an investment be made in an eligible entity that has merely obtained letters of intent from twenty entities doing business in the state to use the services of the establishment's nonstop air transportation from the state to either the east coast or west coast, and that the establishment also receive a moral obligation commitment for the required capitalization. There is no requirement that the establishment being invested in actually establish nonstop air transportation service from the state to either coast. Thus, the only benefits of the credit — in the absence of the establishment of such nonstop air service — are individual benefits to the investor and to the establishment in which they invested. The tax credit does not depend on a positive effect on the inhabitants of the State as a community, and therefore, does not serve a public purpose.
Further, as no public purpose is served, the State does not receive adequate consideration for the granting of the credit. The investment alone is no benefit to the inhabitants of the State as a community, nor is there any forbearance, detriment, loss or responsibility assumed by the taxpayer that would operate as a benefit to the State's inhabitants as a community. Thus, adequate consideration is also lacking in the coast to coast airline service tax credit provisions.
 E. Summary *Page 8 
In sum, the Legislature declares the fiscal policy of Oklahoma. Fent,99 P.3d at 247. Two types of income tax credits exist in Oklahoma: non-economic development tax credits and economic development tax credits. Oklahoma non-economic development income tax credits have been held to be constitutional. Id. at 244-48. For an Oklahoma state economic development income tax credit to be constitutional three factors must be present.
 First, it must promote a "`public purpose,' affect[ing] the inhabitants of the state or taxing district as a community." Burkhardt, 771 P.2d at 611.
 Second, adequate consideration must be present. Id.
 Third, there must be adequate controls and safeguards in place. Way, 635 P.2d at 1018.
When these three factors are present, there is no gift and the Oklahoma economic development income tax credit does not violate Sections 14 and15 of Article X of the Oklahoma Constitution. Whether these three factors are present for a specific economic development Oklahoma income tax credit is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 II. TRANSFERABILITY OF TAX CREDITS
While the Legislature has declared that many Oklahoma economic development income tax credits are "freely transferable" to subsequent transferees, [6] this description by the Legislature may be *Page 9 
misleading, because the transferability of these tax credits under Oklahoma law is unconstitutional under Sections 14 and 15(A) of ArticleX of the Oklahoma Constitution unless the three factors discussed above are present.
As we have seen in Part I of this Opinion, in order for an Oklahoma state economic development tax credit to be constitutional, three factors must be present, the credit must serve a public purpose, be supported by adequate consideration, and there must be adequate controls and safeguards in place. When a tax credit that is not supported by all three of these elements is made transferrable by the Legislature under conditions in which the transferee to whom the tax credit is transferred enjoys the full benefit of the credit, the credit in the hands of the new transferee is also unconstitutional. This is so because the tax credit that was transferred was never supported by the required three elements in the first instance. Despite the Legislature's making the transfers "freely transferrable," the State would have recourse against the transferee to revoke all or part of the credit transferred, because the credit was unconstitutional.
An example of an Oklahoma economic development income tax credit that appears to meet the three factors and is transferable is once again the credit for Oklahoma manufacturers of advanced small wind turbines. 2010 Okla. Sess. Laws ch. 327, § 12 (amending 68 O.S.Supp. 2009, § 2357.32B[68-2357.32B]). The statutory language that provides for transferring credits states:
 E. The amount of the credit allowed but not used shall be freely transferable at any time during the ten (10) years following the year of qualification. Any person to whom or to which a tax credit is transferred shall have only such rights to claim and use the credit under the terms that would have applied to the entity by whom or by which the tax credit was transferred.
The provisions of this subsection shall not limit the ability of a tax credit transferee to reduce the tax liability of the transferee regardless of the actual tax liability *Page 10 
of the tax credit transferor for the relevant taxable period. The transferor originally allowed the credit and the subsequent transferee shall jointly file a copy of the written credit transfer agreement with the Tax Commission within thirty (30) days of the transfer. The written agreement shall contain the name, address and taxpayer identification number of the parties to the transfer, the amount of the credit being transferred, the year the credit was originally allowed to the transferor and the tax year or years for which the credit may be claimed. The Tax Commission may promulgate rules to permit verification of the validity and timeliness of a tax credit claimed upon a tax return pursuant to this subsection but shall not promulgate any rules that unduly restrict or hinder the transfers of such tax credit.
Id. (emphasis added).
While the credits are described as "freely transferable" that does not mean the transferee is without restrictions. First, under the language of the statute itself, the transferee of any credit authorized by Section 2357.32B(E) is subject to adjustments made to the transferor by the Oklahoma Tax Commission. Accordingly, the transferee does not enjoy the status of a bonafide purchaser for value, and thus under the statute the three requirements for constitutionality are equally applicable to the transferee and the transferor. That is, if the consideration supporting the tax credit required further action by the transferor — which was never forthcoming, the lack of such consideration would nullify the credit in the hands of the transferee.
An example of an Oklahoma economic development income tax credit that does not appear to meet transferability rules is the tax credit for qualified rehabilitation expenditures. See 2010 Okla. Sess. Laws ch. 327, § 14, ch. 418, § 5 (amending 68 O.S.Supp. 2009, § 2357.41[68-2357.41]). The statutory language that provides for transferring credits has the same language as the credit for Oklahoma manufacturers of advanced small wind turbines, Section 2357.32B. Section 2357.41(F) states, "Any person to whom or to which a tax credit is transferred shall have only such rights to claim and use the credit under the terms that would have applied to the entity by whom or by which the tax credit was transferred."Id. But a limitation immediately following provides:
 G. Notwithstanding any other provisions in this section, on or after January 1, 2009, if a credit allowed pursuant to this section which has been transferred is subsequently reduced as the result of an adjustment by the Internal Revenue Service, Tax Commission, or any other applicable government agency, only the transferor originally allowed the credit and not any subsequent transferee of the credit, shall be held liable to repay any amount of disallowed credit.
Id. (emphasis added). *Page 11 
This transfer statute that does not permit enforcement of the three elements required to support a constitutional state economic tax credit against a transferor is infirm, for it would permit the granting of an economic development income tax credit to the transferee taxpayer without recourse, in instances when the transferor failed to provide the promised consideration, and in instances in which the tax credit either did not serve a "public purpose," or did not have adequate protections and safeguards attached to it.
Another example of an Oklahoma economic development income tax credit that does not appear to meet transferability rules is the tax credit for contractor expenditures for construction of certain energy efficient residential properties. 2010 Okla. Sess. Laws ch. 327, § 15 (amending 68 O.S.Supp. 2009, § 2357.46[68-2357.46]). The statute does not contain language providing that any person to whom or to which a tax credit istransferred shall have only such rights to claim and use the credit underthe terms that would have applied to the entity by whom or by which thetax credit was transferred. Instead Section 2357.46(E) merely provides: "the credits authorized by this section shall be freely transferable to subsequent transferees." Id. Recapture provisions that only apply to the transferor and not to transferees do not provide adequate controls and safeguards for the claim and use of an Oklahoma economic development income tax credit.[7] No "detailed conditions and governmental safeguards and controls" exist. Way, 635 P.2d at 1015. Many times the original taxpayer transferring the tax credit may no longer be in business, and/or has not provided adequate consideration, making an unrestricted tax credit in the transferee hands an unconstitutional gift.
 III. THE SMALL BUSINESS CAPITAL FORMATION INCENTIVE ACT THE RURAL VENTURE CAPITAL FORMATION INCENTIVE ACT
The Small Business Capital Formation Incentive Act, 68 O.S.Supp. 2009, §§ 2357.60-65A[68-2357.60-65A], [8] and the Rural Venture Capital Formation Incentive Act, 68 O.S.Supp. 2009, §§ 2357.71-76A [68-2357.71-76A],[9] both allow a taxpayer who makes a "qualified investment" in either "qualified small business capital companies" or "qualified rural small business capital companies," respectively, a credit against the income tax or the insurance premium tax. 68 O.S.Supp. 2009, §§ 2357.62[68-2357.62]; 2357.73. The acts specifically and in detail define "qualified investment," "qualified small business capital company," and "qualified rural small *Page 12 
business capital company." 68 O.S.Supp. 2009, §§ 2357.61[68-2357.61]; 2357.72. Tax credits are generated only after the qualified capital company invests in an Oklahoma small business venture or Oklahoma rural small business venture, not when an investor buys an ownership interest in the qualified capital company. 68 O.S.Supp. 2009, §§ 2357.62[68-2357.62]; 2357.73. The tax credits were created to be "used in pursuit of a legitimate business purpose" in the respective Acts. 68 O.S.Supp. 2009, §§ 2357.62[68-2357.62](B); 2357.73(B).
In addition to the very detailed definitions of investments that qualify for the tax credits, the Small Business Capital Formation Incentive Act and the Rural Venture Capital Formation Incentive Act also mandate how the investments may be used and how they must be documented. These statutes authorizes the Oklahoma Tax Commission to independently determine whether the proposed use of the investments qualifies for the credits. 68 O.S.Supp. 2009, §§ 2357.61[68-2357.61]; 2357.63A; 2357.72; 2357.74A. Each "qualified small business capital company" and "qualified rural small business capital company" must also prepare and maintain specific and detailed records and reports. 68 O.S.Supp. 2009, §§ 2357.63C[68-2357.63C](A); 2357.64; 2357.74C; 2357.75. Both acts authorized the Oklahoma Tax Commission to recapture tax credits if the investment is returned or refunded, or the Commission otherwise determines that the investment did not qualify. See 68 O.S.Supp. 2009, §§ 2357.63B[68-2357.63B]; 2357.74B.
In spite of these definitions and controls, the statutes do not comply with the constitutional mandates recognized in Way and Burkhardt. The mere investment of money into a company does not satisfy the three factors necessary for an Oklahoma economic development income tax credit to be valid. The State does not "receive property or service" on an investment; hence consideration is absent. Childrens Home WelfareAss'n, 171 P.2d at 614. For these acts to be constitutional and not violate Sections 14 and 15 of Article X of the Oklahoma Constitution the three factors for an Oklahoma economic development income tax credit must be present. First, the tax credit must promote a "public purpose" affecting "the inhabitants of the state . . . as a community, and not merely as individuals." Burkhardt, 771 P.2d at 611 (citation omitted). Second, adequate consideration must be present. Id. Third, there must be adequate controls and safeguards in place. Way, 635 P.2d at 1018. Based on the foregoing, as a matter of law, the Small Business Capital Formation Incentive Act and the Rural Venture Capital Formation Incentive Act are constitutionally infirm under Sections 14 and 15 of Article X
of the Oklahoma Constitution, because while the investment of monies in a business entity may serve to benefit the individual entity, investment alone does not serve a public purpose affecting the inhabitants of the State as a community, and does not provide adequate consideration.[10]
To constitute a public purpose, the investment must result in something more, a benefit to the inhabitants of the State in the form of — for instance, the actual construction of wind turbines or the actual establishment of coast to coast direct air service to Oklahoma. If a tax credit is predicated on investment only and not actual benefit to the inhabitants of the State, it is only the individual company receiving the money that is benefitted, and no public purpose is served. *Page 13 
 It, therefore, the official Opinion of the Attorney General that:
 1. The Legislature declares the fiscal policy of Oklahoma. Fent v. State ex rel. Okla. Tax Comm'n, 99 P.3d 241, 247 (Okla. 2004). The Oklahoma Supreme Court has upheld the constitutionality of Oklahoma non-economic development income tax credits. Id. at 244 48. They are not a gift and do not violate Sections 14 and 15 of Article X of the Oklahoma Constitution. Id. They must, however, have a "reasonable classification and reasonable opportunity for uniform or equal incidence upon the class created." Id. at 245.
 2. To be constitutional an Oklahoma economic development income tax credit must have three factors present:
 First the tax credit must promote a "public purpose" "affecting the inhabitants of the state as a community, and not as individuals." Burkhardt v. City of Enid, 771 P.2d 608, 611 (Okla. 1989).
 Second, adequate consideration must be present, (id.) and
 Third, there must be adequate controls and safeguards in place. Way v. Grand Lake Ass'n, 635 P.2d 1010, 1018 (Okla. 1981). *Page 14 
 3. The mere investment of money into a company does not satisfy the three factors for a valid Oklahoma economic development income tax credit. Childrens Home Welfare Ass'n v. Childers, 171 P.2d 613, 614 (Okla. 1946). When the three factors are present there is no gift and the Oklahoma economic development income tax credit does not violate Sections 14 and 15 of Article X of the Oklahoma Constitution. State ex rel. Brown v. City of Warr Acres, 946 P.2d 1140, 1144 (Okla. 1997). Whether the three factors are present for an economic development Oklahoma income tax credit is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b [74-18b](A)(5).
 4. Oklahoma economic development income tax credits that are freely transferable do not violate Sections 14 and 15(A) of Article X of the Oklahoma Constitution if the credit has the three factors present: public purpose, consideration, and adequate controls and safeguards. All three factors must be present before a transferred Oklahoma economic development income tax credit may be claimed and used. The mere investment of money into a company does not alone satisfy the three factors necessary for a valid Oklahoma economic development income tax credit. See State ex rel. Brown, 946 P.2d at 1144; Childrens Home Welfare Ass'n, 171 P.2d at 614; Way, 635 P.2d at 1018. Rather, the investment must result in the service of a public purpose which affects the inhabitants of the State as a community, not merely as individuals. Burkhardt, 771 P.2d at 611; Way, 635 P.2d at 1015.
 5. The Small Business Capital Formation Incentive Act, 68 O.S.Supp. 2009, §§ 2357.60-65A[68-2357.60-65A], and the Rural Venture Capital Formation Incentive Act, 68 O.S.Supp. 2009, §§ 2357.71-76A[68-2357.71-76A], provide Oklahoma economic development income tax credits to be "used in pursuit of a legitimate business purpose" in the respective Acts. 68 O.S.Supp. 2009, §§ 2357.62[68-2357.62](B); 2357.73(B). Tax credits are generated when a qualified capital company invests in an Oklahoma small business venture or Oklahoma rural small business venture. 68 O.S.Supp. 2009, §§ 2357.62[68-2357.62]; 2357.73. For these tax credits to meet the constitutional requirements of Section 14 and 15(A) of Article X of the Oklahoma Constitution, the three factors must be present: public purpose, consideration, and adequate controls and safeguards. Burkhardt, 771 P.2d at 611; Way, 635 P.2d at 1018. The mere investment of money into a company does not satisfy the three factors necessary for a valid Oklahoma economic development income tax credit. Childrens Home Welfare Ass'n, 171 P.2d at 614. The Small Business Capital Formation Incentive Act and the Rural Venture Capital Formation Incentive Act are, as a matter of law, constitutionally infirm under Sections 14 and 15 of Article X of the Oklahoma Constitution.[11] *Page 15 
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA DAVID L. KINNEY ASSISTANT ATTORNEY GENERAL
[1] Courts have "no authority to consider the desirability, wisdom, or practicability of fiscal legislation." Calvey v. Daxon, 997 P.2d 164, 171
(Okla. 2000). "In ruling on decisions made by the legislature to enact tax credits, it is not the duty or the privilege of this Court to rule on the wisdom, practicality or common sense of the tax credits." Fent at 247.
[2] See Tax Policy Division of the Okla. Tax Commission, Okla. TaxCommission Tax Expenditure Rep.2009-2010, II. Income Tax, A. Credits,available at http://www.tax.ok.gov/reports/TER_2009-2010.pdf.
[3] Table 1 contains Assistant Attorney General David Kinney's excerpts from the Oklahoma Tax Commission Tax Expenditure Report, 2009-2010, II.Income Tax, A. Credits. The report is the "Tax Commission's best estimate of the amount of state revenue that would have been collected" for each item in the report. See id. at 3. The 2010 fiscal year total costs of these income tax credits is almost $260 million dollars. See Table 1.
[4] Whether the three factors are present for an Oklahoma economic development income tax credit is a question of fact that cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
[5] This tax credit had a sunset date of 12/31/2005. Id. § 2357.28(A).
[6] The Oklahoma Legislature amended several of the statutes below, however those amendments are not germane to your questions. See 2010 Okla. Sess. Laws ch. 327, 2010 Okla. Sess. Laws ch. 418.
Oklahoma income tax credits that are "freely transferable" include:
 credit for investments in qualified venture capital companies, 68 O.S.Supp. 2009, § 2357.7[68-2357.7](F);
 Oklahoma Coal Production Incentive Act, 68 O.S. 2001, § 2357.11[68-2357.11](H), (I)); investment in certain enterprises, 68 O.S.Supp. 2009, § 2357.28[68-2357.28](B); electricity generated by zero-emission facilities, 68 O.S. 2001, § 2357.32A[68-2357.32A](F); manufacturers of small wind turbines, 68 O.S.Supp. 2009, § 2357.32B[ 68-2357.32B](E); qualified rehabilitation expenditures-certified historic structures, 68 O.S.Supp. 2009, § 2357.41[68-2357.41](F); investments by space transportation vehicle providers, 68 O.S.Supp. 2009, § 2357.42[68-2357.42](B); contractor expenditures for construction of certain energy efficient residential properties, 68 O.S.Supp. 2009, § 2357.46[68-2357.46](E); railroad reconstruction or replacement expenditures, 68 O.S.Supp. 2009, 2357.104(C).
Contrast: the credit for commercial space industries provides: "In no event shall any credit generated pursuant to the provisions of this section be transferable or refundable." 68 O.S. 2001, § 2357.13[68-2357.13](C).
[7] The credits for qualified venture capital companies (68 O.S.Supp. 2009, § 2357.7[68-2357.7]), Oklahoma Coal Production Incentive Act, (2010 Okla. Sess. Laws ch. 327, § 6 (68 O.S.Supp. 2009, § 2357.11[68-2357.11])); tax credit for investment in certain enterprises, (68 O.S.Supp. 2009, § 2357.28[68-2357.28]); tax credit for contractor expenditures for construction of certain energy efficient residential properties, (2010 Okla. Sess. Laws ch. 327, § 15 (68 O.S.Supp. 2009, § 2357.46[68-2357.46])) have similar statutory transferability language.
[8] The Legislature enacted a moratorium on the Small Business Capital Formation Incentive Act from June 1, 2010 through December 31, 2011 during the 2010 session. 2010 Okla. Sess. Laws ch. 433, § 1.
[9] The Legislature enacted a moratorium on the Rural Venture Capital Formation Incentive Act from June 1, 2010 through December 31, 2011 during the 2010 session. 2010 Okla. Sess. Laws ch. 433, § 4.
[10] An Attorney General's Opinion stating that an act of the Legislature is unconstitutional is advisory only and not binding on a state official. State ex rel. York v. Turpen, 681 P.2d 763, 767 (Okla. 1984). Only a court of competent jurisdiction can issue a binding opinion that a legislative act is unconstitutional. Id.
[11] An Attorney General's Opinion stating that an act of the Legislature is unconstitutional is advisory only and not binding on a state official. State ex rel. York v. Turpen, 681 P.2d 763, 767 (Okla. 1984). Only a court of competent jurisdiction can issue a binding opinion that a legislative act is unconstitutional. Id. *Page 1